# Montgomery et al., School Directors of Ayr Township, *versus* Com'th, ex rel. Robinson et al.

The Act of May 4th 1876, required the school directors of Ayr township to assess and levy a tax upon the basis of the existing valuation for school purposes for said township, to reimburse R. and N. the sum of $700, with interest from July 1864, and as soon as collected to pay to them said sum. This amount was to reimburse them for money advanced to pay the commutation money for men drafted into the United States service, under a call from the President, to fill the quota of the township. *Held*, reversing the court below, that the act was in conflict with art. 3, sect. 7 of the constitution, in that it was a local and special law, and attempted to regulate the affairs of the township.

June 19th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. WOODWARD, J., absent.

Error to the Court of Common Pleas of *Fulton county* : Of May Term 1879, No. 188.

This was a mandamus issued by The Commonwealth of Pennsylvania, ex rel. John Robinson and James P. Nelson and William H. Nelson, administrators of William S. Nelson, deceased, against David Montgomery, George Stouteagle, Thomas Humbert, William Warthin, Leonard Hohman and Captain George W. Skinner, school directors of the township of Ayr, in the county of Fulton.

On the 24th of March 1865, an act was passed by the legislature, providing : " That the board of election officers of Ayr township, in the county of Fulton, be and they are hereby authorized and

[Montgomery *v.* Commonwealth.]

directed to levy, assess and collect a sufficient sum to pay to each volunteer who was credited to said township, under the call of the President of the United States, prior to the 19th of December 1864, and to each man drafted from said township, under said call, the sum of $300 ; and all bonds or obligations, given to secure the payment of said sums are hereby made valid and binding on said township :" Acts of 1865, p. 772.

Pursuant to this act, the election board of Ayr township had levied and assessed a tax for the purposes therein expressed, including the commutation money paid to four drafted men, each the sum of $300, by John Robinson and William S. Nelson, two of the members of the bounty committee, selected by the people of the township at a public meeting, to serve them in procuring volunteers, and raising money to pay bounties, to fill the quota of the township.

The duplicate for the collection of this tax was in the hands of the collector, and he was proceeding to collect the tax, when he was arrested by an injunction, issued out of the Common Pleas of Fulton county, on the application of tax-payers of the township. This injunction was based upon and supported by an Act of Assembly, approved the 30th of December 1866, entitled, " An act repealing an act approved the 24th of March 1865, entitled, an act to legalize the bonds issued by the election officers of Ayr township, in the county of Fulton, for the payment of bounties to volunteers and drafted men, under the call of the President of the United States, prior to the 19th of December 1864."

The act provided that the original Act of the 24th of March 1865, should be repealed, except so far as the same may have relation to bonds not exceeding twenty-five in number, issued to drafted men or substitutes, who actually went into the service of the United States, after September 1st 1864. * * * "Provided further, that nothing in this act, or in the act to which this is a supplement, shall be so construed as to authorize the levying, collecting or payment of any money as *commutation*, or to repay or refund to any person or persons any money so paid. And provided, further : That nothing in either of said acts shall authorize the collection of any tax or taxes, now assessed or hereafter to be assessed, for the payment of the bonds mentioned in this act, until after the legal right of the person or persons holding the same, to receive the amount thereof, shall have been ascertained by the court :" Pamph. L. of 1866, Appendix, p. 1537.

The law remained in this condition until the 4th day of May 1876, when an act was passed, entitled, " An act for the relief of John Robinson and the estate of William S. Nelson, deceased." The first section of this act provided : " That as soon after the passage of this act as practicable, it shall be the duty of the school directors of the township of Ayr, in the said county of Fulton,

[Montgomery *v.* Commonwealth.]

and they are hereby required to levy and assess, upon the basis of the last adjusted valuation for school purposes, for the said township, a tax sufficient to repay and reimburse unto John Robinson and James P. Nelson and William H. Nelson, administrators of William S. Nelson, deceased, the sum of $700, with interest thereon from the 1st of July 1874; the said tax to be levied, assessed and collected as school taxes are, by existing laws, levied, assessed and collected in said township, and the collector of the said tax shall, as soon as he receives the same, pay over to the said John Robinson and James P. Nelson and William H. Nelson, administrators of William S. Nelson, deceased, the said sum of $700, with interest thereon from the said 1st day of July 1864." See Acts of 1876, pp. 201, 202.

The school directors refused to obey the law. Application was made to the Court of Common Pleas of Fulton county for a writ of alternative mandamus to compel the school directors to levy and collect the tax. They filed an answer, denying the validity of the law, alleging it to be unconstitutional. Issues were framed and certain facts found by a jury, in the nature of a special verdict.

. The only question upon the record was the constitutionality of the law, read in the light of the facts so ascertained by the jury.

The main facts were briefly, as follows: At the commencement of the war, at a meeting of the citizens of the township convened for the purpose of taking measures to fill the quota of the township, under the call of the President for troops, a bounty committee was appointed, charged with the duty of raising money to pay bounties and procure volunteers for the township. Of this committee John Robinson and William S. Nelson were members, and the committee continued to act for the township, in pursuance of their original appointment, with the consent of the citizens, until the close of the war.

In one of the drafts during the year 1864, the quota of the township was fixed and given by the provost marshal at a certain number of men, and the authorities of the township proceeded to fill the quota, as originally given and ascertained by the provost marshal, with volunteers, by paying bounties to them. Considerable money for this purpose was raised by voluntary subscription.

Afterward the provost marshal, alleging a mistake in the original quota, required the township to furnish four additional men, which demand the township could not fill with volunteers, and consequently four citizens of the township were drafted to supply the said alleged deficiency.

Of these four drafted men at least two had paid towards filling the quota with volunteers, and one at least would have been exempted on account of physical disability. At this time the government accepted $300 as commutation money in lieu of a man, and credited

the locality upon the payment of that sum as though a man had actually been furnished.

John Robinson and William S. Nelson, after consultation with a considerable number of the taxpayers of the said township (although not a majority), and receiving their consent, advanced $1200, of their own means, to pay the commutation money for these four drafted men, and thus the quota of the township was filled, and the necessity for a further draft obviated. The money they paid, acting for the township in the capacity of members of the bounty committee. Before the injunction was issued as hereinbefore stated, the collection of taxes had so far proceeded under the provisions of the Act of 24th March 1865, that $500 of the sum of $1200 had been repaid to Robinson and Nelson.

The Act of 4th May 1876, was passed to provide means for the repayment to them of the remaining $700 with interest from July 1st 1864.

On the 11th of January 1878, the relators petitioned the Court of Common Pleas, setting forth the above facts and praying for a writ of mandamus, directed to said school directors to assess and levy a tax to repay said balance due. The directors made return to the writ, alleging that the Act of Assembly was unconstitutional. The Commonwealth demurred and the defendants joined therein. The court, Rowe, P. J., entered judgment for the relators in an opinion, inter alia, saying:

"And first I am directed to art. 3, sect. 7, of the constitution: 'The General Assembly shall not pass any local or special laws * * * regulating the affairs of counties, cities, townships, wards, boroughs or school districts, * * * or providing or changing methods for the collection of debts. * * * Nor shall any law be passed granting powers or privileges in any case when the granting of such powers and privileges shall have been provided for by general law, nor when the courts have jurisdiction to grant the same or give the relief asked for.'

"I think the act in question is clearly outside the terms of this last quoted clause, for by a special law only could the power have been conferred, and the courts could not give effect to the moral obligation by providing a remedy, which was the relief sought at the hands of the legislature.

"Then, as to regulating the affairs of township and school districts. I am of opinion that to supply a legal remedy when there is a prior moral obligation in the case of a township is not to regulate the affairs of such township within the meaning of this prohibition. I see no reason why the legislature may not do that in the case of a township, which they may do in other cases: Lycoming *v.* Union, 3 Harris 166.

"In the next place, there is nothing in the act which changes the method for the collection of a debt. But it is urged that it

does provide a method for the collection of a debt. I think this clause must be read in the light of the context, and remembering that before the passage of this act there was neither debt nor remedy. The clause we are now examining has regard to cases where there was both debt and method of collecting it, and in such cases the legislature shall not interfere by special law, either to change the former remedy or to provide an additional one. This law makes the imperfect obligation a perfectly legal one. Then it does no more than the general law would have done, enforce payment by taxation. The question seems to be this, whether this clause forbids in every case the adding a legal sanction to a moral obligation, by special legislation. I do not suppose it has that intent or scope. But I am directed further, to art. 9, sect. 1. ' All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax and shall be levied and collected under general laws.'

" Now, first of all, this section does not execute itself. It does not make void all laws existing on the statute book which can be covered by it. This question, of great concern, has been settled in Lehigh Iron Co. *v.* Lower Macungie Township, 31 P. F. Smith 482. This section is not therefore a repeal *per se* of the Acts of 1864, 1865 and 1866, exempting the property of soldiers. Nor are those acts repealed by the Act of 1873: Rounds *v.* Waymart Borough, 31 P. F. Smith 395.

" This Act of 1876, so far as it exempts ' the person and property of all soldiers in the war of the rebellion, and the widow of such soldiers,' ought, I think, to be construed with reference to the general laws and as applying these laws to the special case before the law-makers. But if this is not so, still the soldiers and their widows constitute a class exempted from taxation, and we have another class, viz.: ' All persons and property that have already contributed to and paid the taxes assessed under the former act for the same purpose'—a righteous exemption, if it can be called an exemption. ' Now all taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the same.' Before the new constitution was adopted, ' the right of the legislature to exempt certain classes of property as well as classes of persons from taxation, was always recognised in this state: Butler's Appeal, 23 P. F. Smith 451. And it is said the power to classify subjects of taxation is not opposed to the constitution of 1874: City of Pittsburgh *v.* Roup, 1 W. N. C. 254–57; Williamsport *v.* Brown, 4 Id. 339, 340; Kittanning Coal Co. *v.* Commonwealth, 29 P. F. Smith 100 ; Brightly's Digest 354. *Sub. numero* 351.

" But there still remains the provision that all taxes shall be levied and collected under general laws. Now in a narrow sense, at least, these taxes are provided for in the special laws and are to

[Montgomery *v.* Commonwealth.]

be levied and collected under the general law, that is as school taxes are by existing laws.

"It may be said that the above special act does nothing more than make provision for levying and collecting taxes; that the taxes for the repayment of the relators are levied and collected under this act and not under a general law.

"And that is hard to answer. Yet it does not seem to me that the language of this section involves a denial of the right to impose a tax by special law in every case. If no tax can be imposed except by general law, in any case whatever, then it will be difficult to sanction this act. In this view the act appears to be unconstitutional. But it is far from certain that this is the right view.

"I have said enough to show that the act is not a clear and palpable infringement of the constitution. Then it would not be becoming in me, sitting in an inferior court, to declare the act void: Menges *v.* Wertman, 1 Barr 223. This clause has not received interpretation by the Supreme Court, which is co-ordinate with the legislature, and in the advance of such authority I cannot say the words must not be taken in that sense which would comport with the validity of the law.

"On the whole then I must hold the law to be constitutional, which will require me to enter judgment on the demurrer for the plaintiffs, and it is accordingly so done. Let judgment be entered for the relators, and let a peremptory writ of mandamus issue."

*F. M. Kimmell, J. Nelson Sipes* and *John Stewart,* for plaintiffs in error.—The act is unconstitutional, because both local and special, and is clearly within the prohibition of article 3, sect. 7, of the constitution. The purpose and effect of the act is to regulate the "affairs" of the township. Is it not an attempt to regulate the "affairs" of a township, when the purpose is to make the township responsible for a claim which could not be enforced by law, and to provide for the payment of such a claim, by requiring the officers of the township to assess, levy and collect from the taxpayers of the township, a sum sufficient for the purpose? It provides the method for the collection of a debt.

It is no answer to this objection to say that taxation is the ordinary method for the collection of debts due from townships, nor is it any better answer to say that the claim here is not for a debt, but an imperfect obligation, made valid and enforceable by the act. The relators claim it is a debt due them in equity and good conscience, and the legislators so regarded it when they provided for its payment. It could not have been enforced at law, but this defect the legislature proposed to supply. It provided a method where there was none before; not that there are no methods by which townships could be compelled to pay their debts, but because these methods were not available in this particular case. The

[Montgomery *v.* Commonwealth.]

infraction of the law is as palpable as though a new method had been originated.

But the Act of Assembly is in more direct conflict still, with sect. 1, art. 9, which provides that " all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Unless there is something to be found in the constitution, qualifying this section, the matter is too plain for argument. Standing by itself, it admits of no question or doubt. Here is a special act providing for taxation for a special purpose and occasion, without a single feature to relieve its antagonism to the constitutional provision.

*George A. Smith, J. A. Robinson* and *J. McD. Sharpe,* for defendant in error.—The constitution does not prohibit special legislation except it falls within some one of the prohibited subjects. Outside of those subjects, the legislature has as plenary power to pass, in the manner prescribed, *special acts* under the new constitution as it possessed under the old.

" The General Assembly shall not pass any local or special law, regulating the affairs of counties, cities, townships, wards, boroughs or school districts," what does it mean? It seems to us that this general prohibition, preceding as it does an enunciation of certain specified matters relating to these municipal bodies, must be held to embrace and refer only to matters of the same description and character as those expressly mentioned. The generality of the language mentioned must be restrained by the subsequent classification.

Here was an imperfect obligation resting upon the township to reimburse Robinson and Nelson for money expended by them for the public good, namely, to relieve its citizens from the draft. It was expended under a promise of repayment by taxation.

The duty of reimbursement rested only in good morals, lacking a remedy sufficient to compel its due observance. This act was passed to furnish that remedy. Such a defective obligation has always been esteemed in Pennsylvania vigorous enough to sustain the interposition of legislative aid, without involving a breach of constitutional provision. How such an act can, in any proper or constitutional sense, be termed a regulation of the affairs of a township, we are not astute enough to perceive. It does not approach, either in letter or in spirit, any of the specified subjects of prohibition.

How can an act which creates a debt against the township, and provides for the ordinary mode of its payment, namely, by taxation, be obnoxious to the imputation of " providing or changing the method for the collection of debts ?" We can see nothing in the classification of the exempted persons, or in the extent of the terri-

[Montgomery *v.* Commonwealth.]

torial limits, within which the tax is to be levied, or in the want of uniformity of the tax itself, to offend against the constitutional provision.

The act provides no special method for the assessment or collection of the tax, but refers the whole matter to the operation of general laws. It is as though the general law had been incorporated into and written in the act itself.

Mr. Justice MERCUR delivered the opinion of the court, October 6th 1879.

The complaint of the plaintiffs in error is, that the court entered a judgment ordering a peremptory writ of mandamus to issue against them. The object of the judgment was to enforce the Act of 4th May 1876, entitled, "An Act for the relief of John Robinson and the estate of William S. Nelson, deceased." The act required the school directors of the township of Ayr, inter alia, to levy and assess upon the basis of the last adjusted valuation for school purposes for said township, a tax sufficient to repay and reimburse unto John Robinson, and the administrators of William S. Nelson, deceased, the sum of $700, with interest thereon from the 1st of July 1864. The act also directed that as soon as the collector of said tax received the same, he should pay over to them said sum with interest as aforesaid.

It appears that at a meeting of the citizens of said township, held during the rebellion, Robinson and Nelson were authorized and instructed to pay $1200 commutation money for men drafted into the service to fill the quota of the township, the citizens present promising that a law would be passed authorizing the repayment of the money thus advanced. They advanced the money, and $700 thereof remained unpaid to them when the Act of 4th May 1876 was passed.

The question is whether this act is in conflict with the constitution of 1874. Art. 3, sect. 7, contains a denial of local and special legislative power over many subjects. Among these it declares the General Assembly shall not pass any local or special law regulating the affairs of counties, cities, townships, wards, boroughs or school districts, or providing or changing methods for the collection of debts.

The act in question is clearly local. It applies to the township of Ayr only. It gives no power or authority to the officials of any other township or district. The exercise of all power thereby given is restricted within the bounds of the one school district. It is also special. The tax was to be levied and collected for one specific purpose. That purpose was to pay a certain sum of money to the persons named in the act. The money could not be used for any other or different purpose. It could not be appropriated to the payment of teachers, nor expended in the erection of school

houses; nor in the payment of other indebtedness of the school district, if any such existed. It could not even pass through the hands of the treasurer of the school district. The collector was made the sole disbursing agent of the fund. It is difficult to imagine a clearer case of special legislation. The money is not to be paid to the defendants in error, as a class, but as particular individuals. By no reasonable construction of the statute can any other person or persons legally claim the money thus authorized to be levied and collected.

It is contended that this Act of Assembly does not profess "to regulate the affairs" of the township or school district. Affair is well defined to be, business; something to be transacted; matter; concern. Public affairs are matters relating to government. It is clear that the act does profess to deal with the affairs of the district. It imposes this specific business on the district which it was not chargeable with before. It gives to the collector of this tax, authority to pay over to persons to whom he could not pay before. It imposes taxes on the people which they were not legally chargeable with before. It is then a matter which concerns every person in the district, who was thereby made subject to this additional taxation. One of the highest attributes of governmental power is thereby applied to them. Their property is to be taken from them and given to others. It does then relate to the public affairs of the district. It seeks to regulate them by designating the manner in which, and the persons by whom, these affairs shall be conducted. It gives relief where no legal remedy existed before, and directs and regulates the action of the officers of the district. Thus it is a special act for a special purpose to regulate the affairs of the school district, and is in clear violation of art. 3, sect. 7, of the constitution. As this is decisive of the case it is unnecessary to consider whether the act is in conflict with art. 9, sect. 1, which declares all taxes shall be levied and collected under general laws. The learned judge erred in not entering judgment in favor of the plaintiffs in error on the demurrer.

> Judgment reversed, and judgment is directed to be entered on the demurrer against the defendants in error with costs.