# Davis *versus* Clark *et al.*

1. An Act of Assembly, giving the right to file a mechanics' lien in certain cases, which contains a proviso that the Act shall not apply to counties having a population of over 200,000 inhabitants, is unconstitutional and void, being in contravention of Article III. sect. 7, of the Constitution, which provides that " the General Assembly shall not pass any local or special law authorizing the creation, extension, or impairing of liens."

2. The Act of June 28, 1879 (P. L. 182), authorizing the filing of mechanics' liens in certain cases against leasehold interests in certain lands for work done in boring, drilling, or mining for the development and improvement of the same, which Act contains a proviso that it shall not apply to counties having a population of over 200,000 inhabitants, is unconstitutional and void.

3. The classification of counties by population and the passage of laws applicable to a certain class only have within reasonable limits and for

[Davis *v.* Clark.]

some purposes been admitted, upon the assumption that counties having a small population may ultimately have one much larger. In the present case, however, two counties in the state had at the time the law in question was passed a greater population than 200,000. It cannot be assumed that their population will ever fall below that limit. Hence they are practically and permanently excluded from the operation of the Act, which is, therefore, special in its terms and local in its effects.

April 17, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, of *Luzerne County:* Of January Term, 1884, No. 414.

This was a case stated, wherein Frank Clark was plaintiff, and A. J. Davis, lessee, and John F. Jones, contractor, were defendants, setting forth as follows :—

1. That by indenture of lease bearing date the 28th day of November, 1864, and recorded, &c., Hendrick B. Wright, for himself and as guardian of Hendrick B. Wright, Jr., leased the coal lying under two certain tracts of land situate in the township of Hanover, said county, to Abel Barker *et al.*, with a covenant against underletting.

3. That by indenture of assignment bearing date the 2d day of January, 1865, and recorded, &c., the said Abel Barker *et al.*, after having procured the written assent of the said Hendrick B. Wright thereto, assigned their interest in the said lease to the Warrior Run Mining Company.

3. That by indenture of lease bearing date the 26th day of March, 1870, and recorded, &c., the said Warrior Run Mining Company leased to the said A. J. Davis, for a term of ten years, with privilege of renewal for a further term of ten years, the coal under the tracts of land aforesaid, and since the execution of this lease, he the said A. J. Davis, has paid to the said Hendrick B. Wright and his legal representatives the royalties provided for in the lease first aforesaid.

4. That the said A. J. Davis, pursuant to the lease last aforesaid, went into possession of the said premises, and has ever since remained in possession thereof, mining and removing the coal therefrom.

5. That on the 21st day of October, 1883, the said John F. Jones, by contract in writing of that date, undertook to drive a certain rock tunnel on the premises aforesaid, three hundred feet in length and seven and thirteen feet in depth, for the said A. J. Davis, at seventy dollars per yard.

6. That immediately upon the execution of the last aforesaid contract, the said John F. Jones began to work upon the said tunnel and continued the prosecution of the same for a distance of about sixty yards and until the fore part of the

month of April, 1883, when he abandoned the contract and left the country.

7. That the said Jones employed the said Clark and others to work upon the said tunnel by the day, and at the time he, the said Jones, quit working as aforesaid, he owed him, the said Clark, on account of his work, as day laborer upon the said tunnel and performed as aforesaid at the instance of the said Jones, between the 1st day of March, 1883, and the 23d day of April, 1883.

8. That on the 25th day of April, 1883, the said Clark filed in the office of the prothonotary of Luzerne county, under the Act 28th June, 1879, P. L., 1879, pages 182 and 184, and the other laws of this commonwealth to which the said Act is a supplement, against A. J. Davis, lessee, and John F. Jones, contractor, his claim of which the following is a copy, viz:

In the Court of Common Pleas of Luzerne County. FRANK CLARK v. A. J. DAVIS, Lessee, JOHN F. JONES, Contractor. Mechanics' Lien.

Frank Clark, the above-named claimant, hereby files his claim or statement against the leasehold estate or interest of A. J. Davis, lessee, in certain lands and coal property hereinafter described. The names of the owners or reputed owners of the said property so held under lease are George Wright, Anna Wright, Carrie Wright and Mrs. Hawley, heirs of Hendrick B. Wright and H. B. Wright, Jr. The name of the lessee is A. J. Davis. The name of the person with whom the claimant made this contract is John F. Jones, but the labor done by the claimant was for the use and benefit of the said A. J. Davis. The sum of money claimed to be due is seventy-five and seven-hundreths ($75.07) dollars. The labor done was boring, drilling and mining a rock tunnel by the claimant in the capacity of miner, in the certain coal mine operated by the said lessee on the lands hereinafter described. Said tunnel commences about forty yards from the bottom of the new slope in said coal mine and runs in a southeasterly direction. The said labor was performed by claimant on thirty-two and one-half working days between the 1st day of March, 1883, and the 23d day of April, 1883. The agreed price for said labor was two and thirty one-hundredths ($2.31) dollars per day, making the total sum for such labor $75.07. The locality of the lands upon which the said labor was performed and held under lease by said A. J. Davis, is in the borough of Sugar Notch and township of Hanover, Luzerne county and state of Pennsylvania. These lands consist of two tracts: one of them being parts of lots numbered thirteen and fourteen in the first division of certified Hanover town-

ship, and containing about one hundred and twenty-four acres; the other parcel being parts of lots numbered fourteen and fifteen in the first division of certified Hanover township and containing about one hundred and sixty-three acres. A full description of said lands is contained in lease recorded in Deed Book 100, page 32, &c., in recorder's office in and for said Luzerne county, to which reference, as part of this paper, is hereby made. There is a coal breaker upon this property, together with all the improvements belonging to an anthracite colliery. The lands are operated by the said A. J. Davis in coal mining. The coal is raised by lifts and through a slope to day light.

Witness the hand of the said claimant, the 24th day of April, A. D. 1883.

his

FRANK + CLARK.

Witness: RUFUS J. BELL.          mark.

Sworn and subscribed, &c., this 25th day of April, A. D. 1883.

9. If the court be of opinion that the Act 28th June, 1879, P. L. 1879, page 182, &c., or so much thereof as is applicable to this case is constitutional, and that said Act authorizes a lien for an indebtedness not contracted by the lessee himself or by his agent; and that the work and labor set forth in the claim of the plaintiff was performed upon such an improvement as entitles him, the said plaintiff, to avail himself of the benefits of the Act, or that the said labor of the plaintiff was done for the use and benefit of the said A. J. Davis within the contemplation of the Act; and that (if the said claim does not warrant the construction that it was filed against the development, improvement and leasehold therein set forth,) the plaintiff had a right to file his lien against the leasehold alone without including the development or improvement to the construction of which he contributed his labor; and that the claim of the plaintiff is good notwithstanding the omission therefrom of the statement that the work was done "for the development or improvement of the same," viz., the lease, then judgment to be entered for the plaintiff, but if not, then judgment to be entered for the defendant, the costs to follow the judgment, and either party reserving the right to sue out a writ of error therein.

The title and material sections of the Act of June 28, 1879, are as follows:—

TITLE.—"A further supplement to an Act relating to the liens of mechanics and others, approved the 16th day of June, 1836, and extending its provisions to embrace liens of me-

[Davis v. Clark.]

chanics and laborers upon leasehold estates and property thereon."

SECTION 2. "That all persons performing labor for or about the construction or erection of any engine, engine house, derrick, tank, buildings, machinery, wood or iron improvement, constructed or erected upon any leasehold, held either by written or verbal lease, or for boring, drilling, or mining on any lease or lot, as aforesaid, for the development or improvement of the same, whether such labor is or may be done by the day, or by contract, for the tenant or tenants, lessee or lessees, of such lot or lease or parcel of land, or for their use or benefit, shall have a lien upon such engine or engines, engine house, derrick, tank, building, machinery, wood or iron improvements, oil wells and fixtures on said lot or leasehold of ground, and upon such lot or leasehold itself, for the price and value of such work and labor: Provided, That the lien hereby given shall extend only as to such lease or lot to the interest of the lessee or lessees, tenant or tenants therein."

SECTION 6 contains the following clause : "*Provided*, that the provisions of this Act *shall not apply to counties having a population of over two hundred thousand inhabitants.*"

SECTION 7. "All general laws, or parts of general laws, inconsistent herewith, be and the same are hereby repealed."

Art. III. § 7 of the Constitution declares : "The General Assembly shall not pass any local or special law, authorizing the creation, extension, or impairing of liens.

The court, (WOODWARD, J.), entered judgment in favor of the plaintiff, on the case stated (no opinion filed).

The defendants took this writ of error, assigning for error the entry of judgment for plaintiff.

*F. M. Nichols*, (*L. H. Bennett* with him) for the plaintiff in error.—The Act is special and local legislation, creating liens, and therefore in violation of the first clause of section seven of article three of the Constitution of Pennsylvania. The difference between special and general laws exists in their application to persons and territory, irrespective of any natural conditions by which their effects are controlled. If the intention of the legislature is to confine the operation of the law to certain individuals of a class, represented in every county of the state, or to certain political divisions not unlike the political divisions to which it is made inapplicable, the method employed to effect that result, is of no consequence. The Supreme Court has decided that certain subjects of legislation may be divided into classes, and that one class may have laws not applicable to other

classes. In other words that the legislature may recognize the distinction, which exists in the wants and necessities of different political divisions of the commonwealth, and in the various callings and professions of the people, when the people or such divisions are the subjects of legislation. This rule, however, has no application where the things classified are not the subjects of legislation,—but are used simply to effect the exclusion of some part or members of the class constituting the subjects of the legislation, from the operation of the law. Laws are not special because of the existence of conditions in nature, or of the peculiar relations of the people, which accidentally remove from its application certain territorial districts or individuals; they are obstacles to the uniform operation of human laws, which are not within the control of the legislature, and, therefore, are not to be considered in determining whether the law is general or special. The intention of the legislature and effect of the law considered without reference to causes which *accidentally* limit its application, are the elements which distinguish general from special laws.

Now, the Act in question has for its subject the creation or extension of liens in favor of certain persons, *distinguished* from all other persons in the commonwealth, by the *kind* of *labor* they must perform in order to be entitled to the benefits of the law. It is not applicable to every member of the class of laborers upon whom the benefits are conferred, but every member of this class residing in counties having a population of 200,000 is by positive language excluded from its operation. As shown by the last census, there are at least two counties in the state having a population of over 200,000, viz : Philadelphia and Allegheny. Courts will take judicial notice of the population of localities within the state, as ascertained by the census, and also of the character of the occupation of the people : State ex rel. *v.* Herrmann, 14 Reporter, 339; Ex parte Westerfield, 11 Reporter, 11. A statute relating to persons or things as a class is a general law; one relating to particular persons or things of a class is special. Wheeler et al. *v.* Philadelphia et al., 77 Pa. St., 338; Ex parte Westerfield, 11 Reporter, 11; Scowden's Appeal, 96 Pa. St., 425. A law is not general within the meaning of the Constitution simply because it bears equally upon all persons to whom it is applicable. It must include within its sanction all who come within its purpose and scope. Ex parte Westerfield, 11 Reporter, 10; State ex rel. *v.* Herrmann, 14 Reporter, 339; State ex rel. Richards *v.* Hammer, 42 N. J. L. R., 435.

*W. H. Hines* (*R. J. Bell* with him), for the defendant in error.—This Act of 1879 came before this court in 1882, about

[Davis v. Clark.]

three years after the passage of the Act, and after it had been in full operation in the counties to which, from the geology of the state, it could have any applicability, and the court said, in its opinion, that "*the only question* in the case is whether the Act of 1879 confers a lien for the kind of work described in the claim." Its constitutionality was not questioned, but impliedly recognized: Wilson *v.* Whitcomb, 4 Out., 547.

Cities and political divisions of the state can be the subject of legislative classification according to their varying rank in population; men can be classified according to their vocations; taxes and liens can be imposed according to the character of the objects taxed in the one case and to the nature and extent of the estate in the other. Wheeler *v.* Philadelphia, 27 P. F. S., 348; Kilgore *v.* Magee, 4 Norris, 401; City of Pittsburgh *v.* Roup, 1 W. N. C., 254; S. C., 82 P. F. S., 211. The "improvements" specified in the Act—" tanks, derricks, oil wells, boring, drilling, and mining "—make it clearly evident that the provisions of this Act have no applicability, except to the oil and coal counties of the state. The limitation of their operation is geological, and not legislative. The official geological surveys of the state, and of which the courts will take judicial notice, determined long since the situation of our mineral deposits and petroleum springs. The legislature did not insert this proviso to prevent the mechanics of Philadelphia and Pittsburg from engaging in the " construction or erection " of these leasehold improvements; that proviso, obviously of no practical force, was inserted because, in 1878, an Act was passed similar in its general character to the Act now being considered, *but restricted in its operations to cities of the first class.* The class limitation is the same, but in the reverse order. No attempt has been made to have this Act of 1878 declared unconstitutional; on the contrary, it is spoken of, in a leading text book as of " unquestioned validity ": 2 Troubat & H. Prac., § 1996. If, however, the proviso is invalid, that alone will fail, and the rest will be valid. The authorities are numerous that an inapplicable and idle proviso to an Act must be set aside and declared invalid, rather than that the body of the text should be rejected, and the object of the statute fail. The main purpose of an Act will not be avoided by the unconstitutionality of certain of its provisos: Lea *v.* Bumm, 2 Norris, 237; Smith *v.* Moffet, 1 Barb., 65; Hill *v.* Smith, 1 Morris, 70; Shars. Blackstone, 91; Ibid. Introduction 89 and notes. All presumptions are in favor of the constitutionality of an Act of Assembly, and the court will only declare it void in a perfectly clear case: Commonwealth *v.* Butler, 3 Out., 535; Craig *v.* Church, 7 Norris, 42; Beals *v.* Hale, 4 How., 37. Mechanics' lien Acts are remedial, and should

receive a liberal interpretation : Dame's Appeal, 12 P. F. S., 420 ; Wolcott *v.* Pond, 19 Conn., 597.

Chief Justice MERCUR delivered the opinion of the court, October 6, 1884.

The claim of lien in this case arises on the Act of 28th June 1879, P. L. 182. It was filed under the provisions of the second section thereof. That declares "all persons performing labor for or about the construction or erection of any engine, engine house, derrick, tank, buildings, machinery, wood or iron improvements, constructed or erected upon any leasehold, held either by written or verbal lease, or for boring, drilling, or mining, on any lease or lot as aforesaid, for the development or improvement of the same, whether such labor is or may be done by the day, month or year, or by contract, for the tenant or tenants, lessee or lessees, of such lot, or lease, or parcel of land or for their use or benefit, shall have a lien upon such engine or engines, engine house, derrick, tank, building, machinery, wood or iron improvements, oil wells and fixtures on said lot or leasehold of ground, and upon such lot or leasehold itself, for the price and value of such work and labor : Provided that the lien hereby given, shall extend only as to such lease or lot, to the interest of the lessee or lessees, tenant or tenants therein." By section sixth of the Act it is further " Provided that the provisions of this Act shall not apply to counties having a population of over two hundred thousand inhabitants."

Art. III. section 7 of the Constitution declares "the General Assembly shall not pass any local or special law, authorizing the creation, extension, or impairing of liens."

The main contention is whether the Act of 1879 is in conflict with this clause of the Constitution? It shows on its face that it was not intended to apply, and does not apply to the whole State. It assumes what was a well known fact, that some of the counties had each a population greater than 200,000. In the counties of Philadelphia and Allegheny, that greater population had been legally found by the census of 1870. The constantly increasing population verified by the census of 1880, sufficiently shows that at the passage of the Act the one had a population of 800,000, and the other of over 340,000.

It was not, then, a general Act, applicable to every part of the commonwealth. It did apply to a great number of counties ; but there is no dividing line between a local, and a general, statute. It must be either the one or the other. If it apply to the whole state it is general. If to a part only, it is local. As a legal principle it is as effectually local when it applies to sixty-five counties out of the sixty-seven, as if it

[Davis *v.* Clark.]

applied to one county only.    The exclusion of a single county from the operation of the Act makes it local.

By the terms of this Act, the laborers in the two most populous counties of the state, although they perform the same kind of labor, are as effectually debarred from its operation as if those counties were designated by name, or were outside of the boundaries of the state.    It gives to laborers in some counties rights, powers, and privileges, which it denies to the same class of laborers, performing the same kind of labor in other counties.    It is not only local and special, but odious in its discrimination.    It is in most clear and palpable violation of the constitution, which expressly withholds from the legislature all power to create or extend a lien by a local and special law.

The difficulty here, is not that of classification only; within reasonable limits and for some purposes classification is allowable.    It has been sustained on the basis of population of counties on the assumption that those having a small population, may ultimately have one much larger.    Here the larger are excluded.    We cannot assume that their population will ever be reduced to less than the number named.    They are therefore practically and permanently excluded by the intent and purpose of this Act, which is special in its terms and local in its effect.

It was contended on the argument that the validity of this Act was affirmed in Wilson *v.* Whitcomb, 4 Out., 547.    An examination of that case shows that no question as to its constitutionality, was there presented or considered.    The only question raised or decided was whether the language of the Act conferred a lien for the kind of work described in the claim filed.

To sustain this special Act would open the door to local legislation on all the numerous subjects expressly forbidden by the section of the constitution cited.

The conclusion at which we have arrived makes it unnecessary to consider the other questions argued, or refer to the authorities relating thereto.

> Judgment reversed, and judgment is entered in favor of the plaintiff in error for costs according to the case stated.