# Morrison *versus* Bachert.

1. An Act excluding perpetually from its operation counties containing
more than one hundred and fifty thousand or less than ten thousand in-
habitants is a local law. The perpetual exclusion of certain counties
from the operation of a law is not a classification of counties.

2. An Act to ascertain and appoint the fees to be received by prothono-
taries and other county officers is an act regulating the affairs of counties.
. The affairs of a county within the meaning of the Constitution are such
affairs as affect the people of that county.

3. The Act of June 12th, 1878, entitled, "An Act to ascertain and ap-
point the fees to be received by the sheriffs, coroners, prothonotaries,
clerks of the several courts, registers of wills, and recorders of deeds of
this Commonwealth, except in counties containing more than one hun-
dred and fifty thousand or less than ten thousand inhabitants is a local
law regulating the affairs of counties, and is in conflict with Article III,
section 7, clause 2, of the Constitution.

4. So far as the compensation to county officers is concerned, the counties
of the state have been classified by Article XIV., section 5, of the Con-
stitution.

[Morrison v. Bachert.]

March 9th, 1886.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.  CLARK, J., absent.

ERROR to the Court of Common Pleas of *Northampton county:*  Of January Term, 1886, No. 204.

Case stated in the nature of a special verdict wherein Charles A. Morrison was plaintiff and George Bachert was defendant, as follows:

And now, November 30th, 1885, it is hereby agreed by and between the parties to the above suit, that the following case be stated for the opinion of the court in the nature of a special verdict.

Charles A. Morrison, the plaintiff above named, is and has been, since January last, the prothonotary of said court; and in the suit of Simon Aicher v. George Bachert, No. 63, August term, 1885, in said court, judgment was obtained against the said defendant and execution issued thereon. The said defendant paid said judgment and ordered the fees claimed by said prothonotary for services rendered by him in said suit, to be taxed. The said prothonotary then taxed said fees under the general fee bill provided by the Act of April 2d, 1868, which prevailed in said county prior to the Act of June 12th, 1878, fixing the fees of prothonotaries in certain counties. Said officer claiming that the latter Act was unconstitutional, by reason of the following clause therein contained, "that the provisions of this Act shall not extend to officers in counties containing over one hundred and fifty thousand or less than ten thousand inhabitants." If said Act be constitutional, it would apply to Northampton county, but by the official census of 1870 would not have applied to the counties of Allegheny, Luzerne and Philadelphia, because of their having over one hundred and fifty thousand, nor to the counties of Cameron, Elk, Forrest, Fulton, McKean, Pike, and Sullivan, because of their having less than ten thousand inhabitants; and by the official census of 1880, would not have applied to the counties of Allegheny and Philadelphia, because of their having over one hundred and fifty thousand, nor to the counties of Cameron, Pike and Sullivan, because of their having less than ten thousand inhabitants. Under the said Act of April 2d, 1868, the said prothonotary would be entitled to two dollars and thirty-five cents more for his said services than under the Act of June 12th, 1878.

If the court be of opinion that said Act of June 12th, 1878, is in conflict with the constitution of Pennsylvania, and therefore void, then judgment to be entered for the plaintiff for said amount; but if not, then judgment to be entered for the defendant. The costs to follow the judgment, and either party reserving the right to sue out a writ of error therein.

[Morrison *v.* Bachert.]

The court, SCHUYLER, P. J., entered judgment for the defendant, filing the following opinion :—

The case stated involves the consideration of the Act of June 12th, 1878, P. L., 187, entitled " An Act to ascertain and appoint the fees to be received by the sheriffs, coroners, prothonotaries, clerks of the several courts, registers of wills, and recorders of deeds of this Commonwealth, except in counties containing more than one hundred and fifty thousand or less than ten thousand inhabitants." The sole question is as to the constitutionality of this Act. The plaintiff, who is the prothonotary of this county, contends that the Act is unconstitutional because of the proviso that the provisions of the Act " shall not extend to officers in counties containing over one hundred and fifty thousand or less than ten thousand inhabitants."

At the time the Act was passed there were three counties, to wit, " Philadelphia, Allegheny and Luzerne, which contained over one hundred and fifty thousand ; and seven counties, to wit: Cameron, Elk, Forrest, Fulton, McKean, Pike and Sullivan, which contained less than ten thousand inhabitants. As the Act has no application to these counties, there can be no question that it is local in its nature : Davis *v.* Clark, 10 Out., 384. But all local or special legislation is not prohibited by the constitution. Outside of certain prohibited subjects, the Legislature has as plenary power, under the new constitution, to pass special acts, as it enjoyed under the old. The learned counsel for the plaintiff, recognizing this, argues that the Act under consideration is obnoxious to so much of Article 3, section 7, of the new constitution, as provides that " the General Assembly shall not pass any local or special law regulating the affairs of counties or prescribing the duties and powers of officers in counties." Although in nowise loth, in the interest of the very courteous gentleman and excellent officer who is the plaintiff in this case, to become a convert to this theory, I find myself wholly unable to accept it. I fail to see how an Act, whose sole purpose is to ascertain and appoint the fees to be received by certain officers, in which the county as such, has not a particle of interest, can be said to be an Act " regulating the affairs of counties." By the " affairs of counties " I understand such affairs as concern counties in their governmental and corporate capacity. It is true that prothonotaries are county officers, but this does not make the private fees of these officers a county affair, unless, which is not pretended here, the fees are reduced so low as to impair the usefulness of these officers. At first blush, what is said above would seem to be in conflict with McCarthy *v.* Commonwealth, 16 W. N. C., 497, but the point under discussion was not there raised,

[Morrison v. Bachert.]

nor could it have been successfully, for the Act of Assembly, pronounced unconstitutional in that case, whilst it related to fees of county officers, directly affected the counties embraced in the Act by providing that said officers should be "paid for their services by fixed and specific salaries which shall be a charge upon the treasury of the county to which each shall respectively belong;" so the school district Act declared to be unconstitutional in Montgomery v. Commonwealth, 10 Nor., 125, acted directly upon the district.

In delivering the opinion of the Supreme Court in that case, MERCUR, J., says: "It is clear that the Act does profess to deal with the affairs of the district. It imposes this specific business upon the district which it was not chargeable with, before. It does then relate to the public affairs of the district. It seeks to regulate them by designating the manner in which and the persons by whom these affairs shall be conducted. It gives relief where no remedy existed before, and directs and regulates the action of the officers of the district."

I do not think the present Act open to the objection that it prescribes the "powers and duties" of the officers mentioned in it. The Act deals merely with the fees of such officers. Whilst it is altogether possible that I have placed too narrow a construction upon the language used by the framers of the constitution, I think it is safe to say that the question whether the Act of 1878 offends in either of the particulars urged against it, is at the very least, a doubtful one. This is not enough. "The party who wishes us to pronounce a law unconstitutional takes upon himself the burden of proving beyond all doubt that it is so": Erie v. Casey, 2 Casey, 300, per BLACK, J. And in Sharpless v. Mayor, 9 Har., 164, the same great Judge says: "We can declare an Act of Assembly void only when it violates the constitution clearly, palpably, plainly, and in such manner as to leave no doubt or hesitation in our minds."

And now, December 18th, 1885, judgment is entered for defendant.

The plaintiff thereupon took this writ assigning for error the entering of judgment for the defendant.

*H. J. Steele* (*R. Jones Monaghan, James Monaghan, J. Frank E. Hause, Russell C. Stewart, Carrol R. Williams* with him), for plaintiff in error.—Art. 3, sec. 7, clause 2, of the constitution, provides, "That the General Assembly shall not pass any local or special law . . . . . regulating the affairs of counties, cities, townships, wards, boroughs or school districts."

Clause 15, of the same section, prohibits the passage of any local or special law: "Creating offices or prescribing the

[Morrison *v.* Bachert.]

powers and duties of officers in counties, cities, boroughs, townships, election or school districts."

Clause 17 prohibits the passage of any local or special law "regulating the practice or jurisdiction of, or changing the rules of evidence in any judicial proceeding or inquiry before courts, aldermen, justices of the peace, sheriffs, commissioners, arbitrators, auditors, masters in chancery, or other tribunals."

Article 14, sec. 5, of the constitution, provides : " The compensation of county officers shall be regulated by law, and all county officers who are or may be salaried shall pay all fees which they may be authorized to receive into the treasury of the county or state, as may be directed by law. In counties containing over one hundred and fifty thousand inhabitants, all county officers shall be paid by salary, and the salary of any such officer and his clerks, heretofore paid by fees, shall not exceed the aggregate amount of fees earned during his term, and collected by or for him."

Section 13, of the Act of June 12th, 1878, P. L., 187, entitled, " An act to ascertain and appoint the fees to be received by the sheriffs, coroners, prothonotaries, clerks of the several courts, registers of wills and recorders of deeds of this Commonwealth, except in counties containing more than one hundred and fifty thousand or less than ten thousand inhabitants," contained the following proviso : " That the provisions of this Act shall not extend to officers in counties containing over one hundred and fifty thousand or less than ten thousand inhabitants."

The single question presented by this record is, whether or not the Act of June 12th, 1878, is in conflict with the above provisions of the constitution.

1. As to the construction and interpretation of the constitution.

" A constitution," said Judge GIBSON, in Commonwealth *v.* Clark, 7 W. & S., 127, " is not to receive a technical construction, like a common law instrument or a statute. It is to be interpreted so as to carry out the great principles of the government, not to defeat them ": See also Cooley's Const. Lim., 71, 88 ; Henshaw *v.* Foster, 9 Pick, 312 ; Sedgwick on Statutes, 413–17 ; Monongahela Navigation Co. *v.* Coons, 6 W. & S., 101 ; Mechanics Bank *v.* Smith, 3 S. & R., 69 ; Cronise *v.* Cronise, 4 P. F. S., 260 ; Commonwealth *v.* Clark, 7 W. & S., 127 ; Com. *v.* Dumbauld, 1 Out., 296 ; Com. *v.* Butler, 3 Out., 540.

2. The Act is a local act.

At the time of the passage of this Act ten counties were excluded from its operation, and it was, therefore, clearly a local Act. Nor can it be defended under the legislative power of

classification. A general classification 'of all the political divisions of the state according to their rank in population, with legislation adapted to each class, has been sanctioned as proper: Wheeler v. Philadelphia, 27 P. F. S., 338; Kilgore v. Magee, 4 Norris, 401. But here no general classification is attempted, and no endeavor is made to legislate for the whole state or class. All persons residing in counties having over one hundred and fifty thousand and under ten thousand inhabitants are, by positive language, excluded from the operation of the Act. It does apply to a large number of counties, but only to those within the limits mentioned. If seven or ten counties can be excluded, why cannot fifty, and thus cut off all protection against local legislation? As said in Scowden's Appeal, 15 Norris, 422, "It is special legislation under the attempted disguise of a general law. Of all forms of special legislation, this is the most vicious."

The exclusion of a single county from the operation of the Act makes it local. To the same effect, see Davis v. Clarke, 10 Out., 384; Commonwealth v. Patton, 7 Norris, 260; Scowden's Appeal, 15 Norris, 425; McCarthy v. Commonwealth, 16 W. N. C., 497.

3. The Act seeks to regulate the affairs of counties.

Concerning this provision in our constitution, Senator Buckalew, who was a member of the convention that framed it, says: "In the Pennsylvania provision, the word 'affairs' is the important one to be examined. It was obviously borrowed from the Constitutions which were, in 1873, of most recent formation, in which it was made to supply the word 'business,' found in the earlier constitutions above mentioned. The substitution of a French for a Saxon word—'affairs' for 'business'—was probably made in consequence of judicial opinions which had assigned a somewhat restricted effect to the word business, as found in the earlier constitutions, and was intended to give to the prohibition upon local legislation a more extended application:" Buckalew on Constitution, 72; Montgomery v. Com., 10 Norris, 133; McCarthy v. Com., supra.

It is only on the ground that the services performed by such officers are public services that the power of the legislature to regulate their fees can be maintained. Were the services performed simply an individual service, the legislature would have no more right to regulate their fees than the earnings of private labor.

The Act being void because a local law in conflict with the prohibitions of the constitution, it is wholly so, and no effect can be given to any part of it: Cooley's Limitations, 178.

In Davis v. Clark, 10 Out., 337, and Commonwealth v.

McCarthy, 16 W. N. C., 497, this court refused to give effect to any part of Acts of Assembly there held to be void for similar reasons.

There was no appearance for the defendant in error.

Mr. Justice PAXSON delivered the opinion of the court, April 12th, 1886.

This case was argued with marked ability by the young gentleman who represented the plaintiff in error. There was no appearance for the defendant in error.

The record presents a single question, but it is an important one. It involves the constitutionality of the Act of June 12th, 1878, P. L. 137, entitled "An Act to ascertain and appoint the fees to be received by the sheriffs, coroners, prothonotaries, clerks of the several courts, registers of wills and recorders of deeds of this Commonwealth, except in counties containing more than one hundred and fifty thousand, or less than ten thousand inhabitants."

The Act is a long one, covering the entire question of the fees of the officers above named. It was contended that it was unconstitutional in this, that it was a local or special law, and contravenes so much of Article 3, section 7 of the constitution as declares that "the General Assembly shall not pass any local or special law regulating the affairs of counties, or prescribing the duties and powers of officers in counties."

Prior to the adoption of the present constitution there was hardly an approach to uniformity in the fees of public officers throughout the state. Local acts had been procured for many of the counties, in some instances through the influence of the officers themselves, fixing the fees more in harmony with their own greed than the interests of the people, who may fairly be presumed to have known nothing of it until they came to pay the fees. It was to cut this system up, root and branch, with other evils of like nature, that the clause in question was inserted in the constitution. It was a wise provision, and will be sternly enforced. It is our purpose to adhere rigidly to that instrument, that the people may not be deprived of its benefits. It ought to be unnecessary for this court to make this judicial declaration, but it is proper to do so, in view of the amount of legislation which is periodically placed upon the statute book in entire disregard of the fundamental law. Much of this legislation may remain unchallenged for years, only to be overturned when it reaches this court. In the meantime, parties may have acted upon it, rights may have grown up, and the inconveniences and losses entailed thereby may not be inconsiderable. As we view it, this note of warning at this time is needed.

That the Act in question is in direct conflict with the Con--

stitution is too plain for argument. It is only necessary to read the title to this Act to see this. It excludes perpetually from its operation all counties having a population of over one hundred and fifty thousand inhabitants. This makes it a local law. If it can exclude Philadelphia and Pittsburg, it may exclude every other county in the state but the one county seeking such special or local legislation.

It was held by the learned judge of the court below, however, that an act regulating the fees of the prothonotary or other county officers was not a law "regulating the affairs of counties," and he defines the "affairs of counties" to be such "as concern counties in their governmental and corporate capacity." This will not do. It is too narrow a construction of the constitution. That instrument was intended for the benefit of the people, and must receive a liberal construction. "A constitution is not to receive a technical construction, like a common law instrument or statute. It is to be interpreted so as to carry out the great principles of government, not to defeat them:" Com. v. Clark, 7 W. & S., 127. When it speaks of the affairs of a county, it means such affairs as affect the people of that county. The prothonotary is a county officer; while his fees, when received by him, are his private property, they are paid by the people of the county, not indeed assessed upon all the taxpayers as a salary would be, but upon all citizens who have business with the office or litigation in the courts. As every citizen of the county may be affected by such an Act, and most of them surely will be, how can we say that it concerns no one but the officer entitled to the fees?

The word "affairs" is one of broad signification, and the convention used it understandingly. Mr. Buckalew, who was a prominent member of that body, thus refers to the subject in his very excellent work on the Constitution, at page 72: "In the Pennsylvania provision the word 'affairs' is the important one to be examined. It was obviously borrowed from the constitutions which were, in 1873, of most recent formation, in which it was made to supply the word 'business,' found in the earlier constitutions above mentioned. The substitution of a French for a Saxon word—'affairs' for 'business'—was probably made in consequence of judicial opinions which had assigned a somewhat restricted effect to the word business, as found in the earlier constitutions, and was intended to give to the prohibition upon local legislation a more extended application."

The Constitution of Indiana contains a prohibition of local legislation "regulating county and township *business*." In Estes v. The State, 33 Indiana, 201, it was decided that an Act erecting a criminal court for a particular county was not in conflict with this prohibition; while in Com. v. Patton,

[Morrison *v.* Bachert.]

88 Penn. St. Rep., 258, and Scowden's Appeal, 15 Norris, 422, it was held by this court that an Act of Assembly which authorized the holding of special sessions of the courts of Crawford County away from the county seat, offended against this clause in our own Constitution.

Nor can this legislation be sustained upon any rational theory of classification. In point of fact, there is no attempt at classification; it was a mere exclusion of certain counties. In Com. *v.* Patton, *supra*, it was said, referring to the Act of April 18th, 1878, to provide for the holding of courts in certain cities of this Commonwealth: " Said Act makes no provision for the future, in which respect it differs from the Act of 1874, which, in express terms, provides for future cities and the expanding growth of those now in existence. That is not classification, which merely designates one county in the Commonwealth and contains no provision by which any other county may, by reason of its increase of population in the future come within the class."

It is further to be observed that, so far as the compensation to county officers is concerned, the constitution has classified the counties of the state. It provides that " The compensation of county officers shall be regulated by law, and all county officers who are or may be salaried, shall pay all fees which they may be authorized to receive into the treasury of the county or state as may be decided by law. In counties containing over one hundred and fifty thousand inhabitants, all county officers shall be paid by salary, and the salary of any such officer and his clerks, heretofore paid by fees, shall not exceed the aggregate amount of fees earned during his term and collected by or for him."

This provision affects not only the officer who earns the fees, but also the people who pay them. Hence the people who live in counties where the officers are required to be compensated by salaries have still an interest in, and are affected by any legislation upon the question of fees. For the fees are still collected in such counties, notwithstanding they go into the public treasury, and are, in whole or in part, indirectly returned to the officers in the way of salaries.

In conclusion, we may repeat the remark made of another Act in Scowden's Appeal, *supra*: "It is special legislation under the attempted disguise of a general law. Of all forms of special legislation, this is the most vicious."

We are of opinion that the Act of Assembly in question is unconstitutional, null and void, and we so declare it.

> The judgment is reversed, and judgment is now entered upon the case stated in favor of the plaintiff, the amount thereof to be liquidated by the court below.