# Roumfort Company, Appellant, v. Delaney.

*Constitutional law—Buildings—Regulations—Municipalities—Police power—Enforcement—Presumptions—Local and special legislation—Classification—Municipal "affairs"—Taking for public use—"Powers and privileges"—Act of May 3, 1909, P. L. 417.*

1. Although the Act of May 3, 1909, P. L. 417, requiring exits, fire escapes and other safeguards in buildings where people assemble, might be enforced in such an arbitrary manner as to work hardship and do great injustice in some instances, it will be presumed that officers intrusted with its enforcement will only require such reasonable compliance as the exigencies of each particular case demand, and when so enforced there can be no valid objection on the ground of its requirements being unreasonable.

2. Where classification is relied on to sustain an act it must appear either that the act itself makes a class upon which its provisions operate or that they operate upon an already existing class or classes.

3. Incorporated municipalities may adopt police regulations in reference to buildings of the same character but in so doing they act under power delegated by the state, and the commonwealth is not estopped from exercising its sovereign power directly if it chooses to do so.

4. An act relating to the safeguarding of buildings, which is a state regulation, whose provisions are enforced by state officers, which does not impose upon any city, county, borough, or school district officer any duty to be performed or any responsibility to be incurred, and which does not regulate the fees of any such officer or have anything to do with the revenues of counties, cities or townships, does not regulate the "affairs" of such municipal divisions within the meaning of the constitution.

5. The act of May 3, 1909, requiring exits, fire escapes, fire extinguishers and fire preventatives for buildings of a certain character such as theaters, public halls and other places where persons assemble or the public resort "other than buildings situated in the cities of the first and second classes" is local because cities of the first and second classes are permanently excluded from its operation, but it does not regulate the affairs of municipalities and is, therefore, not within the prohibition of art. III, sec. 7, of the constitution.

6. The act of May 3, 1909, is a proper police regulation, and does not constitute a taking, injury to, or destruction of, property for public use within the meaning of art. XVI, sec. 8, of the constitution.

7. The act of May 3, 1909, grants no "powers or privileges" within the meaning of art. III, sec. 7, of the constitution.

Argued May 23, 1910.   Appeal, No. 7, May T., 1910, by plaintiff, from decree of C. P. Dauphin Co., Equity Docket No. 443, dismissing bill in equity in case of the A. L. Roumfort Company v. John C. Delaney, chief factory inspector of Pennsylvania.   Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.   Affirmed.

Bill in equity for an injunction.   Before KUNKEL, P. J.

The A. L. Roumfort Company was a corporation conducting in the city of Harrisburg a place of amusement. Shortly after the passage of the act of May 3, 1909, orders were issued by the chief factory inspector to the corporation requiring it to make such changes and alterations in its place of business as would fully meet the requirements of the act of 1909.   The corporation filed a bill praying for a decree that the act of 1909 be adjudged unconstitutional and that the chief factory inspector be enjoined from demanding of the corporation compliance with the provisions of the act.   A preliminary injunction was granted and thereafter the defendant filed a demurrer to the bill. The court below filed an opinion sustaining the demurrer, dissolving the injunction theretofore granted and dismissing the bill.   Plaintiff appealed.

*Error assigned* was decree dismissing bill.

*C. H. Bergner* and *Lyman D. Gilbert,* with them *Frederic W. Fleitz* and *J. H. Langfitt,* for appellant.—The act is local: Davis v. Clark, 106 Pa. 377; Scranton v. Silkman, 113 Pa. 191; Wheeler v. Philadelphia, 77 Pa. 338; Weinman v. Railway Co., 118 Pa. 192; Reeves v. Traction Co., 152 Pa. 153; Bradford City v. P. & N. Y. Tel. & Tel. Co., 26 Pa. C. C. Rep. 321; s. c., 206 Pa. 582; Scranton v. Whyte, 148 Pa. 419; Chalfant v. Edwards, 173 Pa. 246; Safe Dep. & Trust Co. v. Fricke, 152 Pa. 231; Morrison v. Bachert, 112 Pa. 322; Scowden's Appeal, 96 Pa. 422; Ayars's Appeal, 122 Pa. 266; Perkins v. Philadelphia, 156 Pa. 554.

*William M. Hargest,* assistant deputy attorney general, with him *M. Hampton Todd,* attorney general, and *J. E. B. Cunningham,* deputy attorney general, for appellee.—To sustain an act as an exercise of the police power the courts must only be able to see that it has for its aim the preservation of the public health, morals, safety or welfare: Com. v. Vrooman, 164 Pa. 306; Penna. R. R. Co. v. Electric Ry. Co., 152 Pa. 116; Com. v. Beatty, 15 Pa. Superior Ct. 5; Wyatt v. Ashbrook, 154 Mo. 375 (58 S. W. Repr. 627).

The state may act directly in the exercise of police power: Com. v. Moir, 199 Pa. 534; Wartman v. Philadelphia, 33 Pa. 202.

Under the police power rights of property are impaired, property restricted, and the profits often lessened, without any compensation whatever, not by a taking of the property but by a regulation of its use: Leisy v. Hardin, 135 U. S. 100 (10 Sup. Ct. Repr. 681); Meffert v. Medical Board, 66 Kan. 710 (72 Pac. Repr. 247); Philadelphia v. Scott, 81 Pa. 80; Com. v. Vrooman, 164 Pa. 306; Health Dept. v. Rector of Trinity Church, 145 N. Y. 32 (45 Am. St. Rep. 579; 39 N. E. Repr. 833); Mugler v. Kansas, 123 U. S. 623 (8 Sup. Ct. Repr. 273); Welch v. Swasey, 193 Mass. 364 (118 Am. St. Rep. 523; 79 N. E. Repr. 745).

The act is not special legislation: Com. v. Moir, 199 Pa. 534.

Legislation operating upon a single class of cities may be sustained if the subject-matter relates to the regulation of municipal affairs and if it be applicable to all the members of the class to which it relates: Scranton v. Whyte, 148 Pa. 419; Ruan Street, 132 Pa. 257.

The act does not grant special powers and privileges: Wolf's Appeal, 58 Pa. 471.

OPINION BY MR. JUSTICE ELKIN, January 3, 1911:

This proceeding was evidently instituted to test the constitutionality of the Act of May 3, 1909, P. L. 417. This act requires exits, fire escapes, fire extinguishers and fire preventatives for buildings of a certain character

such as theaters, public halls and other places where persons assemble or the public resort. It was intended to afford greater protection from fire and resulting panic. It is in the nature of a police regulation and must be sustained, if at all, as a proper exercise of the police power. Appellant contends that it is an unreasonable exercise of the police power and should be declared invalid on this ground. We cannot accept this view of the provisions of the act. The subject-matter of the act and the means provided for protecting persons from great danger in cases of emergency are proper for police regulation. It is true the act might be enforced in such an arbitrary manner as to work hardship and do great injustice in some instances, but nothing of this kind appears in the present case. It will be presumed that officers intrusted with its enforcement will only require such reasonable compliance as the exigencies of each particular case demand. The act should be enforced in a spirit not to destroy the usefulness of property or to place undue burdens upon the owner, but only as a protection to such an extent as may be required in view of the situation of the building, having due regard to the use made of it. When so enforced there can be no valid objection on the ground of its requirements being unreasonable. That it will be so enforced may be presumed.

It is further contended that the act offends against art. III, sec. 7, of the constitution in that it is local legislation regulating the affairs of counties, cities, townships, wards, boroughs, or school districts. The position of appellant is that the act is local in its application because buildings located in cities of the first and second classes are permanently excluded from its operation. The exclusion of a single county from the operation of a general act relating to counties makes the act unconstitutional: Davis v. Clark, 106 Pa. 377. As stated by Chief Justice MERCUR in the case cited, "It was not, then, a general act, applicable to every part of the commonwealth. It did apply to a great number of counties; but there is no divid-

ing line between a local and a general statute. It must be either the one or the other. If it apply to the whole state it is general. If to a part only, it is local. As a legal prin-. ciple it is as effectually local when it applies to sixty-five counties out of the sixty-seven as if it applied to one county only. The exclusion of a single county from the operation of the act makes it local." This is the rule as the courts have laid it down. The permanent exclusion of cities or other municipal divisions from the operation of a general law is just the same in principle as the exclusion of counties. The act of 1909 tested by this rule is local unless made general by classification, upon which ground the learned court below sustained it. This can only mean that the act divided the state into classes for the purposes of this legislation because there is no existing classification to which its provisions can be made applicable without changing the whole purpose of the statute. Nothing contained in the act indicates an intention to create a new classification, and it does not relate to any existing classification except to exclude from its operation buildings located in two classes of cities. How, then, can it be said that the act either made a new classification, which it did not attempt to do, or that it is to operate upon certain municipal classes already created, which it does not do. It operates upon buildings of the character specified located in any and every part of the commonwealth except in cities of the first and second classes. To make it operative the building need not be located in a city, or borough, or other incorporated municipality. The building may be located in an unincorporated village, or in a mining town, or in a country school district, and if so, the act applies just the same as if the same character of building were located in a large borough or city. The operation of the act depends upon the character of the building and the use made of it and not upon the place of its location. The act operates without reference to any classification for municipal purposes and is not dependent upon any such classification. When,

classification is relied on to sustain an act, it must appear, either that the act itself makes a class upon which its provisions operate, or that they operate upon an already existing class or classes.   The act of 1909 does neither. As an illustration, the legislature has expressly authorized the creation of counties, townships, boroughs and school districts, each one of which municipal divisions constitutes a class upon which general laws operate.   An act relating to county affairs and applying to all counties is a general law.   So, too, an act regulating borough affairs and applicable to all boroughs is general legislation.   The same principle applies to townships and school districts. Legislation affecting all cities is general, but by reason of varying local conditions and upon the ground of necessity the legislature deemed it wise to classify cities so that legislation of a municipal character might be passed for each class without disturbing other cities not requiring such legislation.   The courts have sustained this classification for municipal purposes only.   Hence an act relating to municipal affairs and applicable to cities of the first class, or to cities of the second class, or to cities of the third class, is held to be a general law because it operates upon each member of the class.   It is important to bear in mind in this connection that in every instance the classification above mentioned resulted from positive affirmative legislation.   Classification does not arise by implication.   It is the result of express legislative enactment.   In the present case the act of 1909 makes no attempt at classification.   It is not a classification act and was not intended to be.   From beginning to end it deals with buildings and the duties of state officers and has nothing to do with municipal classification.   For these reasons we think the act does not lose its local character by reason of classification.

We, however, cannot agree with the learned counsel for appellant in the contention that the act regulates the affairs of counties, cities, townships, boroughs or school districts.   If it did, being local, it would be unconstitu-

tional.   In what manner does it regulate the affairs of counties or of any other municipal class?   No one has pointed out how it regulates the affairs of any municipality and the act is silent upon the subject.   It is true incorporated municipalities may adopt police regulations in reference to buildings of the same character, but in so doing they act under power delegated by the state.   Under the constitution our police power is lodged in the commonwealth which may and frequently does delegate it to municipalities for certain purposes.   The commonwealth, however, is not estopped from exercising its sovereign power directly if it chooses to do so.   This is what was done in the present case.   The act is a state regulation and its provisions are enforced by state officers.   It does not impose upon any city, county, borough, or school district officer any duty to be performed nor any responsibility to be incurred.   The words "counties, cities, townships, wards, boroughs or school districts," do not appear in the act except as the phrase "other than buildings situated in the cities of the first and second classes" makes a reference to the two excluded classes of cities. The chief factory inspector and his deputies are empowered to enforce the law and the state pays all expenses of these officers.   It is the direct assertion of the police power of the state through its own officers, and not through any county, city, township, or other municipal officer.   Its enforcement does not depend upon any county, borough or municipal officer.   It does not regulate the fees of any such officer nor does it have anything to do with the revenues of counties, cities or townships. It does not relate to the affairs of municipalities.   The law would be a valid exercise of police power by the state itself and through its officers if there were not a single municipal division in the commonwealth.   Under these circumstances how can it be successfully contended that the act of 1909 in any manner whatever regulates the affairs of cities, counties or townships?   In every case decided by this court in which was involved the question as

to an act being local or general, the statute then under consideration in some manner related to the affairs of the class to which it applied. In Montgomery v. Com., 91 Pa. 125, the act required school directors to levy and assess a tax for a certain purpose; thus having to do with the affairs of a township. In Morrison v. Bachert, 112 Pa. 322, the Act of June 12, 1878, P. L. 187, was declared unconstitutional because it regulated and fixed the fees of county officers and was local in its application. In Frost v. Cherry, 122 Pa. 417, certain duties were imposed upon county commissioners in connection with the repeal of the fence law of 1700, 1 Sm. L. 13, the method provided for the repeal being such as to make the law local in its application. In Straub v. Pittsburg, 138 Pa. 356, the Act of June 14, 1887, P. L. 395, relating to certain powers conferred upon the guardians of the poor in cities of the second class was held to be a regulation of the affairs of such cities upon the ground that the care of the poor was a municipal function. But the act in express terms dealt with the duties of these officers and was therefore a regulation of their affairs. In Perkins v. Philadelphia, 156 Pa. 554, the act related to the officers composing the building commission of Philadelphia. There are many other cases in which the same question was involved but in each instance the act related to the duties of municipal officers, or to their fees, or to the revenues of the municipality, or to some other municipal function. There is nothing of this character in the case at bar. The act of 1909 imposes no duties upon any municipal officer; does not regulate their fees; does not provide for the levy and assessment of any tax; does not require the performance of any municipal function; and does not relate to an "affair" of any municipality. So far as the present case is concerned it does not matter whether the word "affairs" be given a liberal construction or a more limited interpretation. In any event it must relate to some kind of an "affair" of the municipality. The act of 1909 does not relate to any such affair. It, therefore, necessarily follows that this act

does not regulate the affairs of a county, or city, or borough or other municipal division within the meaning of the constitution.

It is local because cities of the first and second classes are permanently excluded from its operation, but it does not regulate the affairs of municipalities and is therefore not within the prohibition of art. III, sec. 7, of the constitution. What, then, is the situation? Section 8 of art. III provides for the enactment of local legislation but requires notice to be published in the locality to be affected for thirty days prior to the introduction of the bill into the general assembly. The act of 1909, although local for the reasons stated, was a proper subject for legislative action, provided notice by publication was given as required by the constitution. The presumption is that what the constitution requires as to publication was done.

The appellant further contends that the act violates sec. 8 of art. XVI of the constitution which prohibits the taking, injury or destruction of property for public use without just compensation. The answer to this position is that a proper police regulation requiring certain safeguards in buildings where people assemble does not constitute a taking, injury to, or destruction of, property for public use, within the meaning of the constitution.

It is also contended that the act violates sec. 7 of art. III of the constitution which provides that no law shall be passed "granting powers or privileges in any case, where the granting of such powers or privileges shall have been provided by general law." This position is not well taken. It is a sufficient answer to say that no "powers or privileges" within the meaning of the constitution are granted by the act of 1909, and the clause in question has no application under the facts of the present case.

Upon the record here presented and for the reasons above stated, the assignments of error are overruled and the decree is affirmed at the cost of appellant.

MR. JUSTICE MOSCHZISKER, concurring:

While I concur in affirming the decree in this case, the opinion of the majority seems to me, in several respects, so far at variance with certain of our former decisions and with the thought heretofore expressed by this court, that I deem it best to put my views upon record.

I agree that the Act of May 3, 1909, P. L. 417, is a reasonable exercise of the police power; that the legislature may enact any local or special law not expressly prohibited in the constitution; that classification must be for municipal purposes, and that where the constitutionality of an act depends upon the theory of classification, the act itself must make the classification or the subject of the act must be within the sphere of an established classification. But I cannot agree that the subject-matter of this act is not within the sphere of established classification; and in this connection I cannot subscribe to the restricted meaning given to the word "affairs" in the majority opinion.

The constitution provides that the general assembly shall not pass any local or special law "regulating the affairs of counties, cities, townships, wards, boroughs, or school districts." The Act of June 25, 1895, P. L. 275, classifies cities, inter alia, for "the purposes of legislation, regulating their municipal affairs." Under this act, without any further special classification, the general assembly may legislate on matters concerning the municipal affairs of the subdivisions as therein classified, and such an act would be general and not local: Wheeler v. Philadelphia, 77 Pa. 338.

The word "affairs" in the constitution and in the classification act should be given the same construction, and it should not be a narrow one. Mr. Buckalew in his book on the constitution, at p. 72, says: "In the Pennsylvania provision the word 'affairs' is the important one to be examined. It was obviously borrowed from the two constitutions which were in 1873 of most recent formation, in which it was made to supply the place of the word 'business' found in the earlier constitutions above mentioned.

This substitution of a French word for a Saxon word—
'affairs' for 'business'—was probably made in conse-
quence of judicial opinions which had assigned a some-
what restricted effect to the word 'business' as found in
the earlier constitutions, and was intended to give the
prohibition upon local legislation a more extended appli-
cation." In Morrison v. Bachert, 112 Pa. 322, the lower
court defined "affairs of counties" to be such "as concern
counties in their governmental and corporate capacity."
On appeal we said: "This will not do. It is too narrow a
construction. . . . When it (the constitution) speaks of
the affairs of a county, it means such affairs as affect the
people of that county;" and we there cite with approval
the excerpt just quoted from Mr. Buckalew's book. In
Frost v. Cherry, 122 Pa. 417, after citing Morrison v.
Bachert, 112 Pa. 322, for a definition of the word "af-
fairs," we held the act there in question unconstitutional
as local legislation, saying, "The act . . . . concerns the
great body of the people of the county. It affects every
farmer, . . . . and every person who keeps horses or cat-
tle. . . . How then can it be said that it does not relate
to the 'affairs' of counties within the meaning of the
constitution?"

The thought running through our cases seems to be
that if the subject-matter of an act would naturally fall
within local control, that is, if it is a subject which, in the
absence of state legislation controlling the matter, a local
governing body could regulate by ordinance, or be given
the power so to do, it is a municipal affair: Reeves v.
Phila. Traction Co., 152 Pa. 153; Van Loon v. Engle, 171
Pa. 157; Anderson v. Township, 217 Pa. 369. To my mind
the present act is one dealing with such affairs, and, by the
exclusion of cities of the first and second classes, unless
saved by classification, it offends the constitutional re-
striction against local legislation. The question is, Does
the act lose its local character by reason of classification?
In other words, it being within the power of the general
assembly to legislate for cities in matters connected with
their municipal affairs to the exclusion of the rest of the

state, can they so legislate for the whole state excluding one or more classes of cities?

It might have required considerable exposition of thought to state satisfactorily an answer to this question were it not for our decision in Rose v. Beaver County, 204 Pa. 372, affirming 20 Pa. Superior Ct. 110, where Judge BEAVER said: "The objection to the bill that it is not general in its application is not well founded.   It relates to every county within the state.   It is true that it excepts cities from its operation, but if the legislature has power to legislate for the government of cities and provide affirmative legislation for their particular needs, and not only so, but to legislate for the several classes of cities, how much more should it have power to except cities in general from the operation of laws which are not applicable to their peculiar needs?" It will not do to dismiss this case from our consideration.   The contention may be made that we could have laid down a different rule, but we have there given our express affirmance to the view that under the classification act, upon permissible subjects, cities may not only be legislated for to the exclusion of the rest of the state, but the rest of the state may be legislated for to the exclusion of cities.   That decision is binding upon us until expressly overruled.   The attempted distinction that "the difference between that case and the one now before the court consists in the fact that here all the cities are not excluded from the legislation" is not a valid one, for cities being classified, each class is just as much a whole for purposes of general legislation as the sum total of all the classes; if all of them can be excluded, then any one or more of the classes can be excluded.   In the present instance, the legislature might well have considered that the matter covered by the act required different regulation in small cities and rural communities than in the large cities.

In view of our decision in Rose v. Beaver County, supra, I cannot agree with the statement in the majority opinion that the act "is local because cities of the

first and second classes are permanently excluded from its operation." In my opinion, under our ruling in that case, the act can be supported as general legislation, and we should rest our decision upon that ground. It is true, we have declared acts unconstitutional as local legislation where they contained a proviso making them inapplicable to counties having a population of over a certain number (Davis v. Clark, 106 Pa. 377), saying that such legislation could not be sustained upon any rational theory of classification, because in point of fact it made no attempt at classification but merely at exclusion: Morrison v. Bachert, supra. But that line of authorities is to be distinguished from the present case by the fact that the legislature has never taken counties out of the general whole and classified them for purposes of legislation; whereas cities have been so classified, and the classification has been upheld: Wheeler v. Philadelphia, supra.

The vice of the majority opinion is that by the circumscribed meaning placed upon the word "affairs," the operation of the provision of the constitution restricting the passage of local laws regulating the affairs of communities is unduly limited. If the majority view is adhered to, in my judgment it will tend to fritter away that most important provision and lead to future abuses. The fact that the enforcement of the provisions of an act is committed to state officers should not be given any controlling effect in deciding whether or not it deals with municipal affairs within the meaning of the constitution or the classification act. The act of 1895 gives several headings under which cities are therein classified for the purposes of legislation, of which the first is, "regulating their municipal affairs," then, "the exercise of certain corporate powers," and next, "having respect to the number, character, powers and duties of certain officers thereof." The first takes in all matters such as we have before defined as comprehended within the term, "affairs," while the others cover what may be strictly termed "governmental matters," to be worked out through of-

ficials of the communities.   If the general assembly sees fit to legislate on a subject which would fall strictly within the term "municipal affairs," the fact that it puts the enforcement of the law in the hands of state officers will not change the character of the act.   It still remains one regulating the affairs of communities and subject to the restraint against local legislation, unless saved by classification.   If this be not so, then, notwithstanding the prohibition in our organic law, the home affairs of each community can be interfered with by purely local acts to be· administered by state officers.   This is the end to which the reasoning of the majority leads, and it is one of the very evils thought to have been abolished by the constitution.

In the respects indicated I cannot agree with the majority, but, for the reasons stated in this opinion, I join in the final order affirming the decree of the court below.

Mr. Justice Stewart joins in the above concurring opinion.