HENDERSON, *Administrator*, v. THE WABASH, ST. LOUIS &
PACIFIC RAILWAY COMPANY, *Appellant*.

**Railroads:** DOUBLE DAMAGE ACT: CONSTRUCTION. Section 809, Revised
Statutes 1879, subjects a railroad to the payment of double damages
for hogs which escape upon its track by reason of its neglect to fence
and in consequence are killed by its engines and cars.

*Appeal from Ray Circuit Court.*—HON. G. W. DUNN, Judge.

AFFIRMED.

*Wells H. Blodgett* for appellant.

The judgment should be reversed, because, 1st, The
word cattle was not used in the statute in its broadest sense
and cannot properly be construed as including horses, mules
and swine.   2nd, The words " or other animals," as em-
ployed in the statute, do not enlarge the signification so as
to make the statute include swine or any animals other
than horses, cattle and mules which are therein specifically
enumerated.    *Grumley v. Webb*, 44 Mo. 445 ; *City of St.
Louis v. Laughlin*, 49 Mo. 559 ; *State v. Crenshaw*, 22 Mo.
447 ; Potter's Dwarris on Statutes, p. 236 ; 2 Parsons Cont.,
(5 Ed.) 502.

MARTIN, C.—This action was commenced before a
justice of the peace, in Ray county, to recover double the
value of a certain hog, owned by plaintiff, and which it
was alleged got upon defendant's track and was killed, in
consequence of defendant's failure to erect and maintain
fences on the sides of its railroad at the point where said
animal got upon said track and was killed, etc.    The action
was brought under what is now section 809, of the Revised
Statutes.    The plaintiff had judgment for double damages
before the justice, from which the company appealed to the
circuit court.    In the circuit court the plaintiff again
recovered judgment for double the value of the animal,

and from that judgment the company appealed to this court.

The only question for determination is, as to whether the statute, section 809, subjects railroad companies to the payment of double damages for the killing of hogs which get upon their tracks and are, in consequence thereof, killed by their engines and cars. The statute in question, after defining the kind of fences and cattle-guards that shall be erected and maintained by railroad companies on the sides of their roads, provides as follows: "And, until fences, openings, gates and farm crossings, and cattle-guards, as aforesaid, shall be made and maintained, such corporations shall be liable in double the amount of damages which shall be done by its agents, engines or cars to horses, cattle, mules or other animals on said road, or by reason of any horses, cattle, mules or other animals escaping from, or coming upon said lands, etc., etc."

The position of the learned counsel for appellant may be stated in his own language: "Only when used in its broadest sense does the word 'cattle' include sheep, goats, horses, mules, asses, swine and persons; in this statute the word 'cattle' cannot be construed as including, or meaning the same thing as the words 'horses and mules,' therefore, the word cattle was not used in its broadest sense, and not being used in its broadest sense it cannot be construed as meaning or including swine." The word "cattle" is a collective name for domestic quadrupeds, including "the bovine tribe, also horses, asses, mules, sheep, goats and swine; but especially applied to bulls, oxen, cows and their young." Worcester. The argument of the appellant is, that the legislature must have intended to use the word in its special signification, otherwise it would not have employed the use of other words to include horses and mules which the word "cattle," if used alone, would have included. The result of the language employed is that sheep and swine must be excluded from the operation of the act, or the words "horses and mules" are redundant

designations of animals sufficiently expressed in the word
"cattle," or the words "other animals" must include animals of a class not mentioned in the enumeration of animals
which precedes them. Either the legislature has intended
to deny the remedial effects of the law to the owners of
sheep and swine, or they have been guilty of a slight repetition in the words specially referring to horses and mules,
or have used the word "other" in a broader sense than usually conceded to it by the rules of interpretation.

The rule that words of general signification are restricted in their application by the use of special words
pointing to a special meaning, in which the words of general signification may be used, is only a rule of interpretation. It is to be followed as an aid to ascertain the true
meaning of the author. It is not an absolute rule which
must be followed irrespective of consequences or results.
Vattel says: "In applying rules for interpreting statutes
to questions on the effect of an enactment, we can never
safely lose sight of its object. That must be the truest exposition of a law, which best harmonizes with its design,
its objects and its general structure." Vattel, B'k 2, ch. 17,
§ 285. In construing a statute Lord Mansfield says: "Let
us consider what are the mischiefs intended to be remedied,
and the provisions of the act for remedying them." *Pray v.
Edie*, 2 T. R. 313. Indeed the fundamental rule underlying
all rules of interpretation of statutes requires us to give
such construction of them as shall, in the most complete
manner effect the known purpose and object for which they
were enacted, provided the language is adequate to afford
such construction without violating the obvious meaning
of the words and terms employed. *Silver v. Railroad Co.*,
78 Mo. 528; *People v. Dana*, 22 Cal. 11. Effect should be
given, if possible, to every clause and section of an act, so
as to make the whole act consistent and harmonious. If
this becomes impossible, then we are to give effect, in any
event, to what was the manifest intention of the legislature,
though by so doing we may restrict the meaning or applica-

tion of general words; Sedg. Stat. & Const. Law, 201 (2nd Ed.); or treat others as surplusage. *U. S. v. Stern*, 5 Blatch. C. C. 512; *Haentze v. Howe*, 28 Wis. 293. Even though the statute be regarded as penal in form, the main object and scope of it is not changed on that account. Unquestionably, the legislature intended to furnish to the owners of farm stock, and to the passengers and employes on railroads a protection against loss and injury which did not exist at common law. Swine and sheep were as liable to loss and injury, and as liable to be the cause of accidents to railroad trains as horses and oxen. The mischief to be remedied embraced them equally with other farm stock and no reason is apparent why they should have been excluded from the provisions of the act. To carry out the well known object and purpose of the act as completely as possible, we should give a construction which will include them, unless this would do violence to the language employed. No such violence is perceptible. The intent of the act is carried out by either attributing to the word "cattle" its more comprehensive and general meaning which would include swine, or by construing the words "other animals" to include all other domestic quadrupeds liable to injury by railroad trains. The latter construction probably more nearly approximates the meaning in which the phrase was actually used by the legislature.

The rule of interpretation which would confine the phrase to the restricted meaning contended for by appellant, would lead to an unreasonable result, and require further legislation to maintain the well known purpose of the act. The fact that the construction approved by us either imputes to our law-makers the rhetorical offense of redundancy in employing the words "horses and mules," an offense by the way quite common to literary authors in our language, or attributes to the word "other" a broader meaning than usually conceded to it by the technical rules of interpretation, is a trifling objection when compared with the alternative one of greatly abridging the manifest scope

and benefits of the act. The legislation upon this subject for nearly thirty years, goes strongly to support the construction we think proper to approve. In the revision of 1855 railroads were made liable for injuries to "animals" on uninclosed portions of their track without proof of negligence. 1. R. S. 1855, p. 649, § 5. The railroads formed under the railroad act were required to maintain fences and cattle-guards "suitable and sufficient to prevent cattle and animals" from getting on the railroad. 1 R. S. 1855, p. 437, § 52. They were made liable, until such fences and cattle-guards should be erected, in single damages for injuries to "cattle, horses or other animals." In the revision which went into force March 20th, 1866, the provisions of the railroad act relating to damages to animals were extended to all railroad corporations formed, or to be formed, in the State. Double damages were imposed, and the phraseology of the statute underwent a slight change, assuming the form in which it now appears as applying "to horses, cattle, mules or other animals." Gen. St. 1865, § 43. The provision relating to single damages in the damage act, remained the same. R. S. 1865, p. 601, § 5. "A mere change in the phraseology of a statute will not be deemed to alter the law, unless it evidently appears that such was the intention of the legislature." Sedg. Stat. and Const. Law, (2 Ed.) 197.

In this case I have to say that the change of phraseology does not indicate the change of intention contended for. The changes effected all tend to an extension of the operation of the act, and not to any abridgment of it. This is the general understanding of the legislation on this subject, which has been practically acquiesced in by the railroads for the last twenty years. After paying for injuries to swine and sheep for so long a time, I think the roads are late in raising the objection now urged in the construction of the statute.

The judgment should be affirmed, and it is so ordered. All concur.