[No. 1022.   September 13, 1904.]

TERRITORY, ex rel., T. J. CURRAN et al., Appellants, v. THOMAS C. GUTIERREZ et al., Appellees.

SYLLABUS.

1. By Laws 1903, p. 38, c. 27, section 3, in effect April 14, a new county was created from B. county, and an election ordered to be held on that day for the election of county officers of B. county; but by an amendment passed March 12, 1903, (Laws 1903, p. 80, c. 49), two persons named were appointed county commissioners of B. county. They were directed to qualify on or before April 5, 1903, and to hold a meeting not later than April 10, and appoint an assessor and a probate judge. *Held*, that such provision, which in effect ousted the existing officers of B. county before their terms of office expired and appointed new officers in their place, was a local and special law regulating county affairs, within the prohibition of Act Cong. July 30, 1886, c. 818, 24 Stat. 170, prohibiting territorial Legislatures from passing local and special laws regulating county and township affairs.

2. Laws 1901, p. 18, c. 2, section 1, provides that, whenever a vacancy in any county office shall occur by reason of death, resignation, "or otherwise," it shall be the duty of the governor of the territory to fill such vacancy by appointment, and that the appointee shall be entitled to hold the office until his successor is elected and qualifies. *Held*, that the words "or otherwise" should not be construed *ejusdem generis*, but rather as extending the scope of the statute to include vacancies other than such as were created by death or resignation.

Appeal from the district court of Bernalillo county, before B. S. BAKER, Associate Justice. Reversed and remanded.

EDWARD L. BARTLETT, Solicitor-General, and F. W. CLANCY, District Attorney, for appellants.

The statute appointing the defendants to office is not a rightful exercise of legislative authority.

Calder v. Bull, 3 Dall. 388, et seq.; Cooley's Constitutional Limitations (7 Ed.), 242-3; People v. Hurlbut, 24 Mich. 44; Nebraska v. Moores, 41 L. R. A. 627, and same case pp. 729-730; People v. Detroit, 28 Mich. 228; State v. Denney (Ind.), 21 N. E. 274, 282; Evansville v. State, 21 N. E. 267; Sutherland on Statutory Construction, secs. 67-70; Mechem on Pub. Officers, secs. 106-7, 123; Note in 48 L. R. A. 479, et seq.

The act is void because it confers a special privilege and franchise on defendants.

6 Wentworth's Pleadings, p. 28.

The power of appointment to office is a franchise.

Fry v. Mitchie, 68 Mich. 329.

The act is void as a local, special law, regulating the affairs of Bernalillo county.

Com. v. Clark, 7 W. & S. 127; Morrison v. Buchent, 112 Pa. 329; Commonwealth v. Patton, 88 Pa. 259; Montgomery v. Commonwealth, 91 Pa. 133; Scowden's Appeal, 96 Pa.

422; Frost v. Cherry 122 Pa. 420-426; O'Connor v. Fond du Lac, 109 Wis. 269; Renner v. Holmes, 98 N. J. L. 193.

The Legislature has provided by a general law for the filling of all vacancies in county offices.

Section 1 of chap. 2 of the Laws of New Mexico of 1901; Regina v. Edmundson, 2 Ellis & Ellis, 77; Cockburn v. Alexander, 6 M. G. & S. 817; Cork R. W. Co. v. Goode, 13 C. B., 835; Doggett v. Catterns, 17 C. B. 674; Doggett v. Catterns, 19 C. B. 767; Fenwick v. Schmalz, L. R. 3 C. P. 313; 2 Sust. Inst. 137; State v. Hal man, 3 M'cCord, 306; Doyle v. Bayonne, 54 N. J. L. 315-6; People v. Bealoba, 17 Cal. 397; Ellis v. Beale, 18 Me. 339; Foster v. Blounte, 18 Ala. 687; Henderson v. R. R. Co., 81 Mo. 608; State v. Kelley, 32 Ohio St. 429; Shelford v. Louth R. Co., 4 Ex. D. 319; In re Leicester Club, 30 Ch. D. 629; Driffield Co. v. Waterloo Mills Co., 31 Ch. D. 638; Carpenter v. Mitchell, 54 Ill. 131; Black v. Canal Co., 22 N. J. Eq. 400; Warren v. Geer, 117 Penn. 211; Browns Case, 117 Mass. 411; In re Clark, 9 Wend., 222; Hegler v. People, 44 Mich. 301-2; Flower v. Witkosky, 69 Mich. 373; Brown v. Corbin, 40 Minn. 509-10; Hilton's Appeal, 166 Penn. 357-8; Whelens Appeal, 70 Penn. 429; Rawson v. State, 19 Conn. 298-9; Grissell v. R. R. Co., 54 Conn. 467; Pittsburg R. Co. v. Mahoney, 148 Ind. 197, 46 N. E. 920; Downing v. Marshall, 23 N. Y. 388.

W. B. CHILDERS for appellees.

The act creating the county of Sandoval, approved March 10, 1903, and the act of March 12, 1903, amendatory thereof, is not in conflict with, or in violation of the act of Congress approved July 30, 1886, and the act of July 19, 1888 amending the same.

1 Supplement to Rev. Statutes of U. S., 502; 24 Statutes at Large, 170; 1 Supplement, 598; 24 Statutes at Large, 336.

The appointment to a public office is not granting to an individual any special or exclusive privilege, immunity or franchise whatever.

14 Am. and Eng. Ency., 4; Bank of Augusta v. Earle, 13 Pet. 595; Tennessee v. Whitworth, 117 U. S. 146.

For definitions of "a public office" see:

23 Am. and Eng. Ency. (2 Ed.), 322; Mechem on Public Officers, sec. 1; Trustees v. State of Indiana, 14 How. 273; Clinton v. Engelbrecht, 13 Wall. 446; Cooleys Constitutional Limitations, 34, note; Guild v. First National Bank, 57 N. W. 504; Baca v. Perez, 8 N. M., 187.

The act appointing appellees to office is not in conflict with the act of 1886, and the act amendatory thereof.

People v. Glenn County, 35 Pac. 302-4; People v. McFadden, 81 Cal. 489, 22 Pac. 851; People v. Board of Supervisors (N. Y.), 34 N. E. Rep. 1106; Mobley v. Police Jury, 6 So. 779; Fort v. Cummings et al., 36 N. Y. S. 36, and cases cited, and pp. 38 & 39; State v. Piper, 24 N. W. 205; Reals v. Smith, 56 Pac. 690 (Wyoming); State v. Benedict, 15 Minn. 198, (Gil. 153); Jordan v. Bailey, 37 Minn. 174, 33 N. W. 778; see also, Sprague v. Brown, 40 Wis. 612; People v. Hurlbut, 24 Mich. 44; State v. Harris, 45 N. W. 1101.

This act is not a "regulation of county affairs."

Holliday v. Sweet-Grass County, 48 Pac. 533; Mode v. Beasley, 42 N. E. 727-730; Century Dictionary, definitions of "Business" and "Affairs;" Websters Dictionary, definitions of

same words; Psalms, cxii, 5; Shakespeare, Othello, iii, 3; Julius Caesar, iv, 3; As You Like It, iii, 3; Henry VIII, ii, 2; Measure for Measure, v, 1; Tennessee v. Whitworth, 117 U. S. 146; See, also, Sedgwick on the Construction of Stat. and Constitutional Law, 360.

The Legislature exercised the power of appointment in this case by the passage of this bill with the consent and approval of the Governor. It was the sole judge as to whether conditions in this case, demanded a different mode of appointment from that adopted in other cases, provided it could do so by special act at all.

Guthrie National Bank v. Guthrie, 173 U. S. 528.

The power of appointment is not essentially an executive function nor when performed by a legislative body is it necessarily a legislative act.

People v. Hurlbut, 9 Am. Rep. 103, 24 Mich. 44; Fox v. McDonald (Ala.), 21 L. R. A. 536, 13 Am. State Rep. 125; note by Freeman in People v. Woodruff, 32 N. Y. 364.

As to questions of public policy:

People v. Hurlbut, 24 Mich. 44; Redell v. Moores, 55 L. R. A. 740-744, 88 N. W. 243; Newport v. Horton, 22 R. I. 196, 50 L. R. A. 330.

Does the act in question confer a special privilege or franchise on the defendants?

Taylor v. Beckham, 44 Mo. 129; Butler v. Pennsylvania, 10 How. 178 U. S. 576.

The act in question is not void as being a local or special law regulating county affairs.

United States v. Fisher, 2 Cranch. 358; McCullough v. Maryland, 4 Wheaton 316; 1 Roses notes, 212 and 872; Cooley on Constitutional Lim., 77; Sprague v. Brown, 40 Wis. 612.

The power to provide for the appointment of such officers is vested in the Legislature and the Governor by the organic act of the Territory.

United States v. Bevans, 3 Wheaton, 391; United States v. Chase, 135 U. S. 255-260; Moore v. Am. Trav. So., 2 How. 141; Sedgwick on Construction of Statutes, 360, note.

Irrepealable laws cannot be passed.

Cooley on Constitutional Limitations, 149.

### STATEMENT OF THE CASE.

In 1903 the Legislature created the county of Sandoval, the territory embraced in the new county being taken from the county of Bernalillo. The act was approved March 10, 1903, but except in a few minor details, went into effect so as to segregate the territory, April 14, 1903. The act provided among other things, for an election to be held April 14th, for the purpose of electing two county commissioners, a probate judge and an assessor for the county of Bernalillo as it would be constituted after the division occurred. Two days later another act was passed and approved amending section 3 of the former act, as follows:

"That T. C. Gutierrez, to fill the unexpired term of the second district, and Severo Sanchez, be and they are hereby appointed and constituted county commissioners for the county of Bernalillo, as the same is constituted after the creation of Sandoval county, and the said T. C. Gutierrez and Severo Sanchez shall qualify as said county commissioners on or before the fifth day of April, 1903, and shall together with the county commissioner now in office for the said county of Bernalillo, hold a meeting not later than the tenth day of April, 1903, and said three persons as a board of county commissioners for Bernalillo county shall appoint one assessor, and one probate judge for the said county of Bernalillo to serve until their successors are elected and qualified at the next general election."

On the twenty-second day of April, 1903, an information in the nature of a quo warranto was filed in the district court of Bernalillo county by the solicitor-general, at the relation of Thomas J. Curran, Daniel A. McPherson, T. G. Pratt, Henry Brockmeier, Otto Dieckman and John Beaven, alleging that on the thirteenth day of March, 1903, the respondents Thomas C. Gutierrez and Severo Sanchez, did usurp and still do usurp the offices of county commissioners of Bernalillo county by entering upon said offices without legal warrant and praying that the respondents be required to show by what warrant of authority they hold said offices. On the second day of May, 1903, the respondents filed answer denying usurpation and averring that they were lawfully entitled to said offices under and by virtue of the acts of the Legislature to which reference has been made. A demurrer was filed to the answer in terms as follows:

1. The act of the legislative assembly set up in the answer is invalid because it is not a rightful exercise of legislative power.

2. Said act is invalid because it is an interference by the Legislature with the right of local self-government.

3. Said act is void because it is a local and special law regulating county affairs.

4. Said act is void because it is a local and special law granting to defendants a special and exclusive privilege, immunity and franchise.

The demurrer was overruled by the court, and the plaintiff refusing to plead further, judgment was rendered dismissing the proceeding. The plaintiff prosecuted an appeal to this court.

OPINION OF THE COURT.

McFIE, A. J.—From the above statement, it is apparent that there is but one question for the determination of this court, namely, the validity of section 3,

chapter 27, Laws of 1903, as amended by section 1, chapter 49, Laws of 1903. This section is set out in full in the statement of the case and need not be repeated here. The original section made provision for an election to be held on the fourteenth day of April, 1903, for the purpose of electing two county commissioners, one probate judge and one assessor for the county of Bernalillo as the same would be constituted after the taking effect of the act creating Sandoval county, out of a portion of Bernalillo county. The provision for the election of those officers was set aside two days later, by the passage and approval of chapter 49, section 1, which act amends section 3 of the original act by making direct appointments by the Legislature, of Thomas C. Gutierrez and Severo Sanchez as county commissioners of the old county, authorizing them to qualify and in conjunction with one county commis- sioner of Bernalillo county, appoint a probate judge and an assessor for Bernalillo county. The act creating Sandoval county did not take effect until April 14, 1903, thus the county of Bernalillo remained unchanged until that date. If the old county remained until that date, it necessarily follows, that the legally elected officers of Bernalillo county would not be affected or their rights impaired, prior to taking effect of the act creating the new county, even though it were conceded that officers of the old county residing within the new, became disqualified and their offices vacant upon the taking effect of the act, and the segregation of the Territory. It will be observed that section 3, as amended, in terms provides, that the commissioners appointed, "*shall qualify as said county commissioners on or before the fifth day of April, A. D., 1903, and shall together with the county commissioner now in office for the said county of Bernalillo hold a meeting not later than the tenth day of April, 1903, and said three persons as a board of county commissioners for Bernalillo county shall appoint one assessor and one probate judge for the said county of*

*Bernalillo to serve until their successors shall be elected and qualified at the next general election."*

The information alleges a usurpation of the offices of county commissioner by Gutierrez and Sanchez from the thirteenth day of March, 1903.    The answer does not deny this date, but avers that they were legally appointed under section 3 above referred to, and qualified as required by law.

There is no provision for the removal of any of the officers of Bernalillo county in either of the acts under consideration, consequently, while the old board of county commissioners were still in office, a new board was created and authorized to enter upon and discharge duties legally devoling upon the old board, and prior to the creation of the new county.

It must be admitted that Gutierrez and Sanchez were acting within the terms of said section 3, therefore, if that act is valid, there was no error committed by the court below in the construction given the legislation. If however, the Legislature exceeded its powers the legislation is void and the decision below erroneous.

It will be presumed, in the absence of proof, that the offices of Bernalillo county were in the possession of lawful incumbents, there being a general law in force at the time this legislation was enacted, by which the governor of the Territory was authorized to fill by appointment, all vacancies in county offices.    Section 1, chapter 2, Laws of 1901.

To sustain an act, therefore, by which the Legislature appoints successors to legal incumbents of county offices and authorized them to qualify and take possession prior to the existence of a vacancy, there must be absolute power in the Legislature over the subject-matter of the legislation.    That a new county was being formed is of no consequence in this case, because the acts complained of occurred before the new county was created.    Nor can it be justified upon the ground that it was a necessary result of the formation of the new

county, for the same reason. The legislation challenged here, must stand or fall upon the proposition, that the Legislature has absolute power to remove and appoint county officers at will and regardless of their tenure of office. That this was the view taken by the learned judge who tried the cause is apparent from the following language in his opinion.

"By this act of Congress the sole and exclusive power to fill county offices is vested in the legislative power, with authority to delegate such power to the voters of the several counties, to be exercised in such manner as may be provided by the legislative power; or the legislative power may appoint such officers."

The act of Congress referred to by the court, is section 8 of the organic act, as amended by section 1857, Revised Statutes, which, in so far as the same relates to county officers is as follows:

"All township, district, and county officers shall be appointed or elected in such manner as may be provided by the governor and legislative assembly of each Territory." Section 1857, Rev. Stat. U. S., 1878.

Section 7 of the organic act creating this Territory provides, "The legislative power of every Territory shall extend to all rightful subjects of legislation not inconsistent with the Constituion and laws of the United States." Rev. Statutes U. S. 1878, sec. 1857.

If this case rested upon these provisions alone, the absolute power of the Legislature might be urged with confidence, because it would be a rightful subject of legislation, for the Legislature and the governor to provide the manner of election or appointment of county officers. But this is not all the legislation of Congress relating to legislative power of a Territory. It may be well to observe, that even those acts place a limitation upon the power of Territorial Legislatures, in that they are forbidden to enact laws inconsistent with the Constitution and laws of the United States. This provision declares the laws of Congress to be superior to those of a

Territorial Legislature and wherever a conflict exists between them, the laws of Congress must prevail. Congress has power, therefore, to place limitations upon the power of the Legislature of New Mexico, and this power it appears, has been exercised quite liberally.

In 1886, Congress enacted a law placing sweeping limitations upon the power of Territorial Legislatures in regard to local and special legislation, doubtless growing out of the abuse of the power theretofore enjoyed by such Legislatures, in this respect. This act (commonly called the Springer Act), was approved July 30 A. D., 1886, and is chapter 818, 24 Stat. at Large, 170.

Section 1.—That the Legislature of the Territories of the United States now or hereafter to be organized shall not pass local or special laws in any of the following enumerated cases, that is to say:

Granting divorces.

Changing the names of persons or places.

Laying out, opening, altering and working roads or highways.

Vacating roads, town-plats, streets, alleys, and public grounds.

Locating or changing county-seats.

Regulating county and township affairs.

Regulating the practice in courts of justice.

Regulating the jurisdiction and duties of justices of the peace, police magistrates, and constables.

Providing for changes of venue in civil and criminal cases.

Incorporating cities, towns, or villages, or changing or amending the charter of any town, city or village.

For the punishment of crimes and misdemeanors.

For the assessment and collection of taxes for Territorial, county, township or road purposes.

Summoning and impaneling grand or petit jurors.

Providing for the management of common schools.

Regulating the rate of interest on money.

The opening and conducting of any election or designating the place of voting.

The sale or mortgage of real estate belonging to minors or others under disability.

The protection of game or fish.

Chartering or licensing ferries or toll bridges.

Remitting fines, penalties, or forfeitures.

Creating, increasing, or decreasing fees, percentage or allowances of public officers during the term for which said officers are elected or appointed.

Changing the law of descent.

Granting to any corporation, association or individual the right to lay down railroad tracks, or amending existing charters for such purpose.

Granting to any corporation, association or individual any special or .exclusive privilege, immunity or franchise whatever.

In all other cases where a general law can be made applicable, no special law shall be enacted in any of the Territories of the United States by the Territorial Legislatures thereof.

Section 7.—That all acts and parts of acts hereafter passed by any Territorial Legislature in conflict with the provisions of this act shall be null and void."

It is apparent, that after the enactment of this law, the provision of our organic act, that the legislative power extend to all rightful subjects of legislation, etc., was not nearly so extensive as when it was originally conferred in 1850. Many local and special laws were etc., was not neary so extensive as when it was originally given by the organic act, which are clearly prohibited by the act of Congress of July 30, 1886, as it will be admitted that the Legislature is prohibited from enacting any local or special law in conflict with any of the numerous provisions of section 1 of that act. Section 7 of the act makes this clear. Counsel for appelles concedes that the act of the Legislature under which appellees claim the right to hold offices, is a special act,

and the learned judge who tried the cause below in his opinion says:

"The appointment by the legislative power of Gutierrez and Sanchez as county commissioners of Bernalillo county was certainly special and local legislation."

The sentence just quoted, expresses the view of the court below, that the act of the legislature which is appealed to by the appellees as the source of their power to act, is both local and special legislation, and we agree with the court below in his further statement, that it could not be otherwise. It is quite apparent that the act could have no operation outside of Bernalillo county. Its provisions are purely temporary and evidently not intended nor claimed to be a general law. Nor does the act by any of its provisions attempt to repeal, modify or affect the general law above referred to relating to the filling of vacancies in county offices. It being conceded therefore, that the act in question here, and upon which appellees rely for their authority to act as county commissioners of Bernalillo county, is both local and special legislation, the question then arises, whether or not, such legislation is prohibited by the limitation upon the power of the Legislature, imposed by the act of Congress of July 30, 1886. The act of Congress referred to, among other things, forbids the Legislature from enacting any law "regulating county and township affairs." The same act in another paragraph prohibits the Legislature from passing an act "regulating the practice in courts of justice;" and in still another paragraph the Legislature is prohibited from passing laws "regulating the jurisdiction and duties of justices of the peace, police magistrates, and constables."

Counsel for the appellant insists, that the act of the Legislature under which the appellees claim to hold office, is void because it is an act regulating county affairs within the meaning of the act of Congress. Counsel for appellees deny this, and the court below held, that

the act of the Legislature relied upon by the appellees was not a regulation of county affairs; and further, that the Legislature had absolute power to remove county officers and fill vacancies, and that the act of Congress of July 30, 1886, placed no limitation upon this power. It is instructive to observe the difference in the language of the three paragraphs above quoted from the act of Congress. The first paragraph seems to be without limitation simply prohibiting the "regulation of county affairs." There is no attempt to declare what specific affairs are forbidden to be regulated, and therefore it seems to have been the intention of Congress to use the word "affairs" in the broadest sense as applied to counties; but, when the act refers to the courts, it refers to specific things. In the second paragraph it prohibits the Legislature from regulating the *"practice* in courts of justice" and in the third paragraph it prohibits the regulation of the *"jurisdiction and duties* of justices of the peace and police magistrates and constables.'' The omission of and designation of specific county affairs, seems to indicate that the intention of Congress was to prohibit all interference of the Legislature, by local and special legislation, with anything which could be properly understood to be local to a county, and would justify the belief that Congress used the term "county affairs," not in any narrow and restricted sense, but in a broad and comprehensive sense. Counsel for appellees have referred us to the case of Mode v. Beaseley, 42 N. E. 727.

The Supreme court of Indiana in that case construed a provision of the constitution of that State, which prohibited special acts "regulating county and township business," and the court said:

"The term business when applied to a public corporation signifies the conduct of the usual affairs of the corporation and the conduct of such affairs as commonly engage the attention of township and county officers," thus giving the language a somewhat restricted

sense, if it is to be understood that the court is distinguishing between the officers and the duties to be performed by them, but it is doubtful that the Court so intended.

But counsel for the appellees, further insistes, that the word "business" in the constitution of Indiana, and the word "affairs" in the act of Congress referred to above, are used in exactly the same sense. While it may be true that the word "business" and the word "affairs" used in statutes, may sometimes relate to the same subject-matter, in our opinion the word "affairs," which, in recent years has supplanted the word "business" in the constitutions of some of the States and is used in our organic act and acts of Congress—which operate as a constitution for this Territory—is a much more comprehensive term than the word "business" as defined by the courts of the State of Indiana. In the State of Pennsylvania the constitution, at one time, used the word "business," whereas in later constitutions the word "affairs" is used, the prohibition being "the generaly assembly shall not pass any local or special law regulating the affairs of counties." . . .

In the case of Morrison v. Bachert, 112 Pa. S. 322, the supplanting of the word "business" in the former constitution by the word "affairs" in the latter, is referred to, and the Supreme Court says:

"The word 'affairs' is one of broad significance and the convention used it understandingly. Mr. Buckalew who was a prominent member of that body, thus refers to the subject in his very excellent work on the constitution, at page 72.

" 'In the Pennsylvania provision the word "affairs" is the important one to be examined. It was obviously borrowed from the constitutions which were, in 1873, of most recent formation, in which it was made to supply the word "business" found in the earlier statutes above mentioned. The substitution of a French for a Saxon word—"Affairs" for "Business"—was probably made

in consequence of judicial opinions which had assigned a somewhat restricted effect to the word "business," as found in the earliest constitutions and was intended to give to the prohibition upon local legislation a more extended application.' "

The Supreme Court in that case further says:

"It was held by the learned judge of the court below, however, that an act regulating the office of the prothonotary or other county officers was not a law 'regulating the affairs of counties in their governmental and corporate capacity.' This will not do. It is too narrow a construction of the constitution. That instrument was intended for the benefit of the people, and must receive a liberal construction. A constitution is not to receive a technical construction like a common law instrument or statute. It is to be interpreted so as to carry out the great principles of government, not to defeat them. Commonwealth v. Clark, 7 W. & S. 127 . . . when it speaks of the 'affairs' of a county, it means such affairs as affect the people of that county." Commonwealth v. Patton, 88 Pa. 259: Montgomery v. Commonwealth, 91 Pa. 133; Snowdoen's Appeal, 96 Pa. 422; Frost v. Cherry, 122 Pa. 420.

The Supreme court of Wisconsin, had this matter before it in the case of O'Connor v. Fond du Lac, 109 Wis. 269. The court said:

"The right to fill an office by a new selection at the expiration of each term thereof is secured to the people of the locality specially concerned, the same as the power to fill the place in the first instance, and any attempt to interfere with that right, working a continuance of an incumbent in office, under the general rule that his incumbency shall continue util a successor is elected and qualified, is held to be as much a legislative appointment and usurpation of power as an express appointment to the place."

In People ex rel. LeRoy v. Foley, 148 New York 667, it was said that ''the power to appoint in such cases

cannot be frequently exercised by the Legislature, nor indirectly by extending the term of an officer under his election. It is clear, it would seem, that if an officer be kept in office, by legislative interference for any period after he could, but for such interference, be displaced by the power that originally selected him for the place, is to all intents and purposes one of the very legislative intermeddlings with local affairs that the constitution was designed to prevent."

In New Jersey the Legislature enacted a statute which attempted to reduce the board of chosen freeholders of counties from thirty to nine. This law was under consideration by the Supreme Court of that State in the case of Renner v. Holmes, 68 N. J. L. 193, and the court held that the enactment of such a law was "an attempt to regulate the internal affairs of counties."

These cases are believed to be in point in so far at least, as they hold that legislative interference with the tenure of couny officers by appointing, removing or changing their term by the Legislature, is intermeddling with the local affairs of counties. County affairs mean affairs local to the county and its government, and to distinguish between the officers of a county and their acts in the government thereof, is a refinement that does not commend itself to this Court. The object of Congress was to prohibit local and special legislation concerning affairs local to the counties, so that they might have a uniform system of government and agents, such as general laws would secure to them. The tendency of the modern legislation of the States, both in the adoption of their constitutions and laws is to place limitations upon legislative power. Congress clearly intended to do the same as to the Territories, and failing to designate any particular "county affairs" the regulation of which is prohibited by the act of July 30, 1886, the term must be taken as comprehending all that pertains to the internal affairs of the counties, and in effect declares, that the Legislature must not intermeddle nor interfere with

the counties, except by general laws or in such matters as are not embraced in the act of Congress imposing limitations.

To concede to the Legislature the power to remove and appoint county officers at will, is to absolutely divorce the officers of a county from the duties they perform. It means that one of the most important parts of the government of a county and the means by which its affairs are to be conducted do not in any way pertain to county affairs. We cannot consent to place upon the language of the act of Congress, the restricted meaning contended for by the appellees, but on the contrary, are of the opinion that the acts of the Legislature upon which the appellees rely, are in conflict with the act of Congress of July 30, 1886, the act being both local and special legislation, pertaining to officers of the old and not of the new county, unless it further appears, that this legislation can be justified, either upon the ground that it is necessarily incidental to the creation of the new county of Sandoval or relates to matters to which a general law can not be made applicable.

The county of San Juan, in this Territory, was the first county created after the passage by Congress of the limitation act above referred to. It is evident that the power to create a new county was considered doubtful, to say the least, in view of the limitations of the act prohibiting the regulation of county affairs, for the reason, that after the enactment of the law creating the county of San Juan the same was submitted to Congress for approval. On the nineteenth day of July, 1888, the act of Congress was approved, the first section of which, ratified and confirmed the act of the Territorial Legislature creating San Juan county, and the second section of the act, amended the act of Congress of July 30, 1886, to the following effect:

"That nothing in the act approved July 30, 1886, entitled 'An act to prohibit the passage of local or special laws in the Territories of the United States, to limit

Territorial indebtedness and for other purposes,' shall be construed to prohibit the creation by Territorial Legislatures of new counties and the location of the county seats thereof."

The effect of this amendment is to confer specific authority for the organization of new counties in the Territory, and to authorize the Legislature to provide for the government of such counties. This necessarily authorizes the appointment by the Legislature and the Governor, of such officers as are deemed necessary for the government of the new county. This amendment has been the authority for the creation of new counties ever since the amendatory act was passed. But, granting that the Legislature has power to create new counties, provide a government therefor, and officers to conduct the affairs thereof, there is no grant of power in that act authorizing the Legislature to interfere with the old county, its officers or its government except as to boundaries. It relates wholly to the creation of the new county and that which is neccesary to be done to put it in operation as a municipal government. Nor can it be properly said that the appointment of the appellees as county commissioners of Bernalillo county, was necessarily incidental to the creation of the new county of Sandoval, for if it were conceded, that the segregation of the territory embraced in the new county from the old had the legal effect to create vacancies in the offices of two of the county commissioners of the old county, still no necessity existed for appointment to fill those vacancies by the Legislature, there being a general law in force at the time this legislation was enacted, providing for the filling of all vacancies in county offices.

Section 1, chapter 2, provides: "Hereafter whenever any vacancy in any county office in any of the counties of this Territory shall occur by reason of death, resignation or otherwise, it shall be the duty of the Governor of the Territory to fill said vacancy by

appointment, and said appointee shall be entitled to hold said office until his successor may be duly elected and qualified according to law."

This act was approved February 11, 1901, and is a general law enacted by the Legislature applicable to every county in the Territory, except the new county in which there could not exist any vacancy within the meaning of the act. This action of the Legislature, therefore, seems to be in conflict with the provisions of the act of Congress, that "where a general law can be made applicable no special law shall be enacted in any of the Territories of the United States by the Territorial Legislature thereof." But counsel refer us to the case of Guthrie v. National Bank, 173 U. S. 526, which, it is contended, holds that it is for the Legislature to determine whether a general law can be made applicable or not and that the determination of the Legislature upon that subject is final. The case just cited gives the Legislature this absolute power in cases where there is no limitation upon the power of the Legislature to act, and the case is not applicable at all to the case now under consideration, because of the act of Congress prohibiting the Legislature of New Mexico from enacting laws regulating county affairs, by local or special legislation.

Counsel for appellees, finally suggest, that the general law of 1901 did not authorize the Governor to fill vacancies resulting from legislative enactment. The statute provides that the Governor shall fill all vacancies in county offices which shall occur by reason "of death, resignation or otherwise." The contention of counsel is, that the word "otherwise" should not be construed as applying to such vacancies, because, under the rule of construction that general language when used in connection with specific, must be construed *ejusdem generis* with the particular things mentioned, and, consequently, the word "otherwise"

does not broaden the statute so as to include other vacancies than such as are created by death or resignation. It may be said at the outset that the decided cases are not uniform upon this subject, but we regard the weight of authority to be against the contention of the appellees. This rule of construction is, of course, one of the general rules governing the construction of statutes, but all rules for the construction of statutes of the Legislature, and the rule invoked here, is but one of the several guides provided for the ascertainment of the legislative intent.

In Doyle v. Bayonne, 45 N. J. L. 315, referring to this rule of construction the court says:

"The canon of construction that is put forward, it may be remarked, is only one of the many guides for ascertaining the intention of the legislative body. It is a rule of common sense, resting upon the notion that the Legislature has disclosed the general character of the subject upon which it was intent, by the particular things or persons mentioned, and, therefore, when a general supplementary term is used, it had in mind only things and persons of the same general character. There are other rules designed for the same purpose, and whenever, by the application of one or more of such guides, a contrary intention is apparent, the rule advanced must yield, for after all, the only thing to be ascertained is, What did the Legislature mean?"

The language of this act discloses that the Legislature intended the word "otherwise" to refer to vacancies occasioned otherwise than by death and resignation. Any other view would seem to make it absolutely meaningless, and this we can not believe the Legislature intended. If the Legislature intended to limit the power of the Governor to fill vacancies to those occurring by death or resignation only, the word "otherwise" would certainly not have been used.

The Legislature no doubt had in mind that vacancies might occur in county offices otherwise than by

death or resignation; a county officer might become a defaulter, abandon his office and remove from the Territory but without tendering his resignation, or if as contended by the appellees in this case, his office became vacant by legislative enactment, it would not be a vacancy created by death or resignation, therefore, the word "otherwise" was added with the evident intention of making provision for filling by the Governor, of any vacancy occurring in the county offices of the Territory from whatever cause, other than that of death and resignation. Statutes should be construed according to the language used, and where the meaning of the language used is apparent, there is no necessity for construction but the act should be given effect according to its terms. This question has been repeatedly before the courts of this country and a reference to them makes it clear, that the language used in this act was used to extend the scope of the act beyond the specific words used.

A reference will now be made to some of the decided cases upon this subject. In the case of People v. Bealoba, 17 Cal. 397, the court had under consideration a criminal statute, as to the definition of murder to which there was added "any other kind of killing." The court held that those words meant a different kind of killing from that which had been previously specifically referred to.

In Ellis v. Beale, 18 Me. 339, the court had under consideration the following clause: "cards and dice or any other game." The court held that horse-racing was a game within the meaning of that statute.

In Foster v. Blount, 18 Ala. 687, the Supreme Court of Alabama had under consideration a statute making it an offense for county judges and their clerks to receive improper fees from "any guardian, executor, administrator, or other person." It was contended that the words "other person" must be construed *ejusdem generis* with the preceding words and could mean only

some one who had paid fees in some matter relating to the administration of estate, but the court held that it meant any person who might receive such fees.

In Henderson v. R. R. Co., 81 Mo. 608, the Supreme Court of Missouri construing the following clause of the statute "horses, cattle, mules or other animals" held that the term "other animals" included hogs.

The Supreme Court of Ohio, in the case of State v. Kelly, 32 Ohio St. 429, construing an act making the county treasurer liable for receiving "any further money out of the treasury for fees, clerk's hire or otherwise," held that the word "otherwise" comprehended every case of getting money out of the treasury other than what the law provided to be legitimate.

The Supreme Court of Illinois in construing a statute wherein power was given to married women to acquire property by "descent, devise or otherwise," held that the term "otherwise" includes an acquisition by purchase. Carpenter v. Mitchell, 54 Ill. 131.

The Supreme Court of New Jersey in the case of Block v. Canal Co., 22 N. J. Eq. 400, held that the word "otherwise," which is always a relative word, is different from that to which it relates."

The Supreme Court of Pennsylvania construing a statute authorizing boroughs to make regulations respecting "the hawking and peddling of marked produce or other articles in the borough," held that the words "other articles" included everything which may be disposed of by the method hawking and peddling. Warren v. Deer, 117 Penn. 211.

The Supreme Court of Michigan had under consideration a statute giving a right of action to "every wife, child, parent, guardian, husband or other person" injured by any intoxicated person. It was contended by counsel that the plaintiff did not belong to the classes enumerated or anything similar, and therefore could not be included within the phrase "other person." The court held that the words "other person" were intended

to cover all persons injured by an intoxicated person. Flower v. Witkowsku, 69 Mich. 373.

In Minnesota a statute was enacted which authorized the formation of corporations for various kinds of business specifically enumerated, followed by the general words "or other lawful business." Defendant's counsel invoked the rule that when particular words are followed by general words the general words are restricted in meaning to objects of the kind particularly enumerated. The court, however, held that the words "or other lawful business" were added for the purpose of including any kind of business not elsewhere provided for, and which might have been omitted from the previous particular enumeration.

In the case of Wheeler's Appeal, 70 Penn. 429, the Supreme Court in construing the phrase "money, stocks or otherwise," held that the word "otherwise" enlarged the scope of the statute so as to cover anything of value, whether real estate, evidence of debt, or any kind of personal property.

The Supreme Court of Connecticut, construing a statute using the term "building or other property," and in which case defendant's counsel invoked the benefit of the rule which would make the general words "or other property" include only subjects *ejusdem generis,* the court refused to sustain the construction contended for. Grissell v. Railroad, 54 Conn. 467.

In the case of Pittsburg R. Co. v. Mahoney, 148 Ind. 197, the court was considering the effect of a clause in a contract in the following terms:

"He 'released said company from any and all liability for and in respect to any such damage, injury or death, by reason of negligence or otherwise' between a railroad company and one of its employees."

The court in that case said, "The words 'such damage, injury or death' refer to the stated damage to property, injury to person, or to his death, but they are not confined to the special negligence previously stated but

to negligence general or otherwise. The word 'otherwise' includes such liability as might arise from any other cause or in a different manner."

In all of the above cases and many more to which reference might be made, the same doctrine of construction was invoked as that invoked in this case, but the construction contended for was not adopted by the court, on the contrary the courts regarded the term "otherwise" as enlarging the scope of the statute so as to make it applicable to other matters and things than those included in the specific words preceding the general terms. The language of our own statue, as clearly indicates the intention of the Legislature to enlarge the scope of the statute so as to embrace a vacancy occurring in any other manner than those embraced in the specific terms, as did the language used in the cases above referred to.

In deciding the case in the court below the learned judge in construing this statute said:

"If the word 'otherwise' is to be construed to mean 'any vacancy' then the words 'caused by reason of death, resignation or removal' were surplusage and must stand for naught because they are included in the words 'any vacancy.' "

It was not surplusage for the Legislature to use the specific terms, as they are effective parts of the act. The Legislature intended the act to apply to vacancies occurring by reason of death or resignation, but the word "otherwise" was added to cover other vacancies which might occur in the future from other causes than those specifically enumerated. While, in one sense, the word "otherwise" might be broad enough to include vacancies referred to by the specific terms, it had a special significance also, that of extending the scope of the statute beyond the limitation of the specific terms. In adding the word "otherwise" the Legislature, doubtless, had in mind the construction placed upon the organic act by this court. (In the Matter of the Attorney General, 2

N. M. 49), in relation to the filling of vacancies in the Territorial offices, wherein the court held, that there was no power to fill a vacancy occurring in vacation otherwise than by reason of death or resignation. This by the adding of the word "otherwise" a more liberal construction would be secured as to county offices.

These considerations lead us to the conclusion that section 3, chapter 27, Laws of 1903, as amended by chapter 49, Laws of 1903, is void, being in conflict with the act of Congress approved July 30, 1886, as amended by act of Congress approved July 19, 1888, prohibiting local and special legislation regulating county and township affairs. Appellees rely upon section 3 above referred to, as the sole source of their appointments and authority to hold the offices now claimed by them, and as we have arrived at the conclusion that said section is void, it follows, as a necessary consequence, that their right to hold office must be denied. In rendering judgment dismissing the cause in the court below error intervened necessitating the reversal of the cause.

The judgment of the court below is reversed and the cause remanded with directions to reinstate the cause and proceed in accordance with this opinion. It is so ordered.

Mills, C. J., and Parker, A. J., concur. Pope A. J. (concurring specially).

Baker, A. J., having heard the case below, did not participate in this decision. His reasons in support of his decision below are filed herewith. Mann, A. J., did not hear the oral arguments and, therefore, did not participate in this decision.


POPE, J. (concurring).—I concur in the judgment of reversal upon the ground that the acts of the Legislature set up in the return are void under the provisions of the Springer Act prohibiting special legislation regulating county affairs. Any presumption, in favor of the legislative action, that the act in question was necessar-

ily incidental to the creation of the new county of San-
doval and thus by the act of Congress of July 19, 1888,
excepted from the operation of the Springer Act, is in
my judgment sufficiently disposed of by the following
facts:

The act creating the county of Sandoval did not take
effect until April 14, 1903.   Notwithstanding this the
persons here proceeded against were constituted com-
missioners of the county of Bernalillo on March 12,
1903, over a month before the new county came into be-
ing; they were required to qualify not later than April
5, 1903, over a week before that date; they were required
to elect an assessor and a probate judge for Bernalillo
county at least four days before the new county existed.
The character of the usurpation consequent upon these
facts may be inferred from the fact apparent in the rec-
ord that the present respondents went into office the
very next day after the Legislature acted, and over a
month before the new county existed.   Legislation
which brings about such an invasion of the rights of a
single community, to regulate the personnel of its most
important local governing board, is in my judgment, vio-
lative of the congressional guarantee against special leg-
islation interfering with county affairs.

Justice Baker, by virtue of section 884, Compiled
Laws of 1897, files his reasons for his decision in the
district court, which can be best done by quoting his
opinion, filed in this cause, in the district court as fol-
lows:

"In the district court, Bernalillo county, Territory
of New Mexico.

"Territory of New Mexico ex rel. Thomas J. Curran
et al., Thomas C. Gutierrez and Severo Sanchez.

"This is an action based upon an information by
the solicitor-general of the Territory of New Mexico,
against Tomas C. Gutierrez and Severo Sanchez to re-
quire the respondents to show by what warrant or au-

thority they hold the offices of members of the board of county commissioners of Bernalillo county.

"The respondents for answer to the information say that they hold said offices by virtue of an act of the Legislature, approved March 10, 1903, which said act is in part as follows:

" 'Section 3. That T. C. Gutierrez, to fill the unexpired term of the second district, and Severo Sanchez be and they hereby are appointed and constitued county commissioners for the county of Bernalillo, as the same is constituted after the creation of Sandoval county, and the said T. C. Gutierrez and Severo Sanchez shall qualify as said county commissioners on or before the fifth day of April, 1903.'

"To said answer the solicitor-general files a general demurrer. The demurrer raises the question of the validity of said act. If said act is invalid the solicitor-general's demurrer must be sustained, and the respondents adjudged to be holding said offices without authority or warrant of law, and must be ousted. If said act is valid the demurrer must be overruled, and the information dismissed.

"Congress, in establishing the Territorial government of New Mexico, divided its powers, as is usual in republican forms of government, into the executive, the legislative and the judicial. The executive power is vested in the Governor of the Territory. Section 3, organic act, approved September 30, 1850. The legislative power of the Territory is vested in the Governor and the legislative assembly. Section 5, organic act, supra. The 'judicial power of the territory, was vested in a Supreme Court, district courts, probate courts, and in justices of the peace.' Section 10, organic act. Section 8 of said organic act provides that "all township, district and county officers  .  .  .  .  shall be appointed or elected as the case may be in such manner as shall be provided by the governor and legislative assembly of the Territory of New Mexico.' This section was

amended on September 9, 1850 (section 1857, R. S. U. S. 1873), and so far as it relates to the subject-matter of the quotation from section 8, it was a re-enactment and reads as follows:

" 'All township, district and county officers shall be appointed or elected in such manner as may be provided by the Governor and legislative assembly of each Territory.'

"Chapter 818 (Statutes at Large, Vol.——) provides 'that the Legislatures of the Territories of the United States now or hereafter to be organized shall not pass local or special laws in any of the following enumerated cases. . . . Regulating county and township affairs; . . . granting to any corporation, association or individuals any special or exclusive privileges, immunity or franchise whatever.' This was amended, or rather, given a construction at the time the act of the New Mexico legislature creating San Juan county was approved, as follows: 'That nothing in the act approved July 30th, 1886, "entitled an act to prohibit the passage of local or special laws in the territories of the United States, to limit territorial indebtedness and for other purposes" shall be construed to prohibit the creation by Territorial Legislatures of new counties and the location of the county-seats thereof.' Section 2, chapter 79, approved July 19, 1888.

"Section 660 of the Compiled Laws of New Mexico, provides: 'Each county shall be divided by the first board of commissioners holding office into three compact districts as equally proportioned to population as possible, numbered respectively one, two and three, and shall not be subject to alteration oftener than once in two years, and one commissioner shall be elected from each such districts by the votes of the whole county as herein provided.'

"Section 688 of said Compiled Laws, provides: 'Any vacancy that may hereafter occur in the board of county commissioners of any county by reason of death,

resignation, removal or otherwise, of any one or more county commissioners, shall be filled by appointment to be made by the governor of the Territory.'

"The foregoing comprises the statutes of Congress and of the Legislature of New Mexico, on the subject-matter before us, down to the act complained of. It will be observed in section 1857, Revised Statutes U. S. supra, that Congress not only conferred upon the legislative power of the Territory the authority to appoint or cause to be elected in such manner as the legislative power may provide, but it makes it the duty of the legislative power of the Territory to appoint or elect in such manner as they provide the several county officers in the Territory. The language is as follows: 'All county officers shall be appointed or elected in such manner as may be provided by the Governor and the legislative assembly of each Territory.' It will be further observed that there is nothing in the constitution of the United States, the organic act establishing the Territory of New Mexico, nor in any of the acts of Congress designating what county officers there shall be in the Territory of New Mexico, that is granted by implication to the legislative power or branch of the Territorial government. When such offices have been created where is the power to fill these offices, and by what means? Referring to section 1857, supra, we find that 'all . . . . county officers shall be appointed or elected in such manner as may be provided by the Governor and legislative assembly of each territory.' By this act of Congress the sole and exclusive power to fill county offices is vested in the legislative power, with authority to delegate such power to the voters of the several counties, to be exercised in such manner as may be provided by the legislative power; or the legislative power may appoint such officers. By the casual observer it would be contended that it is a vested right in every community or at least every county, to elect its own officers; believing in local self-government: but when we look at the last-

mentioned act of Congress we find that the voter has no such inherent right, and, in fact, the only way in which a county can have county offices and county officers is through the legislative power as given it by Congress, and that instead of it being a local self-government, county officers may be appointed by the legislative power, or by delegating such power to some person or persons, entirely ignoring the right of local self-government and the right of the people of each county to elect its own officers. The following case is of much assistance to us in construing section 1857, Revised Statutes supra. In this case, People ex rel. Waterman v. Freeman, 80 Cal. 233, 22 Pac. 173, a statute of California is construed. The statute provided that the State library is under the control of a board of trustees, consisting of five members elected by the Legislature in joint convention assembled, and holding their offices for the term of four years. The action was one on 'information in the nature of quo warranto, instituted by the attorney-general through special counsel, upon the relation of W. K. Waterman, Governor of the State of California, against A. C. Freeman, to test his right to hold the office of trustee of the State library under and by virtue of Pl. Code. Cal., section 2292.' It was contended upon the part of the relator that the appointing to office was intrinsically, essentially and exclusively an executive function, and therefore that it could not be exercised by the Legislature. On the part of respondent it was contended that there is a specific provision in the Constitution permitting the Legislature to thus appoint, citing section 4 of article 20 of said Constitution, which reads as follows: 'All officers or commissioners whose election or appointment is not provided for by this Constitution, and all officers or commissioners whose offices or duties may hereafter be created by law shall be elected by the people or appointed, as the Legislature may direct.' The Supreme Court in passing upon this question said: 'On the contrary, it had not only been decided in other

States of the union under Constitutions containing provisions substantially equivalent to the sections above quoted from our own, that the Legislature could fill offices by itself created, but our own Supreme Court construing identical provisions of our own Constitution had come to the same conclusion.' From a careful perusal of this California case, it will be seen that the court clearly and distinctly sets out the three departments of government and discusses whether or not section 4 of art. 20 of the Constitution infringed upon the executive department.   After holding that it did not it then finds that the Legislature may fill offices by itself created. This seems to have a very close resemblance to the case under consideration.   Section 1858, supra, has the same relation to New Mexico as section 4, article 20 of the Constitution of California has to the State of California and it will be observed that said section 4 provides, 'that all officers or commissioners whose election or appointment is not provided for by this Constitution and all officers or commissioners whose offices and duties may hereafter be created by law, shall be elected by the people or appointed as the Legislature may direct.' You will observe that section 1857, Revised Statute, supra, provides, 'that all county officers shall be appointed or elected in such manner as may be provided by the Governor and legislative assembly of each territory.' They are strikingly similar, there being no provision in all the laws establishing the Territory of New Mexico or acts of Congress since then that provides for a single county officer or the filling of a single county office, but leaves it to the legislative power to appoint or elect.   In California, under the said section of their Constitution, such officers as under the provision may be created, shall be elected by the people, or appointed as the Legislature may direct; and there it is held that officers elected or appointed by the Legislature itself under such a provision were not elected or appointed in conflict with the constitution.   In all the law hereinbefore

cited, there is no express provision for filling vacancies in county offices. In the power to create an office is implied the power to fill the office. It would be mere folly to grant the power to create with no means provided for the filling of such office. Therefore I think we may assume that no one will contend but what there is a power somewhere to fill a vacancy in an office that has been created by the legislative power of the territory. It certainly cannot be contended that there is any power except that of the legislative power in the first instance to provide the manner and means of filling all offices of the kind and character in question here. We have cited authority for the creating of new counties in the territory. This, of course, implies the authority to change the old counties. So when Sandoval county was created the act creating it interfered with Bernalillo county, both as to territory and as to its officers. It created the vacancies of county commissioners in Bernalillo county. The contention and issue in this case is, how, or by whom shall the said vacancies be filled; or, more tersely expressed, had the legislative power of the Territory authority to fill these vacancies? If the authority to fill county offices was vested in the legislative power of the Territory by Congress, as expressed in said section 1857 Revised Statutes, supra, it was the duty of the legislative power (comprising the Governor and the legislative assembly) to fill said vacancies, or it must delegate that power either to the people to elect, or to the Governor, or to some one else, to appoint, or such vacancies must continue. Neither the Governor nor the people have the inherent power, or any power, to fill vacancies in the office of county commissioners unless such power is granted them by the legislative power. If the legislative power cannot directly fill such vacancies, then had the legislative power authority to delegate such power to any person or persons? In short is it possible for the legislative power to delegate to others to do that which it had no power to do itself? The learned counsel for the

solicitor-general devotes considerable space to local self-government, and contends that if the Legislature can appoint officers in this manner he apprehends dire and fearful results. We are not called upon to express our views of the virtues of local self-government, not to predict the effects upon the people in case the law is upheld by the court. It is our whole duty to decide what the law is; not what it ought to be. We are called upon to construe what Congress, in its wisdom, meant when it said: 'All county officers shall be appointed or elected in such manner as shall be provided by the Governor and the legislative assembly.' Would it not be willful misconstruction to say that the foregoing language meant the people or the Governor, had the inherent or primary legal right to fill vacancies in the offices of county commissioners? Would it not do extreme violence to our mother tongue? It is contended that the appointment of Gutierrez and Sanchez by the legislative enactment complained of, was local and special, regulating the affairs of Bernalillo county. The appointment by the legislative power of Gutierrez and Sanchez as county commissioners of Bernalillo county was certainly special and local legislation. In the very nature of things it had to be; but we cannot concede that it was "regulating county affairs." The duties of county commissioners are specifically prescribed by the statute of the Territory: When a county commissioner complies with the law, he acts as a county commissioner; when he does anything else he is not county commissioner, but acts as an individual. The affairs—business and machinery—of the county is not affected or regulated differently by a change of county commissioners. There is but one way prescribed for County Commissioners to act, and that is in compliance with the law of the Territory. When one commissioner drops out and another takes his place, there is no change in the affairs of the county. A county commissioner is no more a part of the affairs of the county than is an engineer a part of

the locomotive. Let us concede for the sake of argument, that the act was an interference with or regulation of county affairs: If so, would it have been less so had the legislative power, instead of acting and using the power vested in it by Congress directly, delegated it to the Governor to appoint, or to the people to elect? Would using that power second-handed, free it from the objection urged? Had political parties nominated, and of the nominees two individuals been elected, would not the individuals thus elected have been granted special and exclusive privileges, immunity or franchise (if it be a franchise)? For power to fill vacancies do we not and are we not compelled to go back to section 1857, Revised Statutes, supra, and either take it direct or filter it through some agency provided by the legislative power? After all it is the legislative power that does it. The solicitor-general through his learned representatives, lays great stress upon the case of Morrison v. Burkhart, 112 Pa. 329. It is difficult to understand how one could apply the principles of that case to the one at bar. In a nutshell the Legislature of Pennylvania provided that in counties of not more than 150,000 nor less than 10,000 inhabitants the fees for prothonotary should be changed and that they should have an increase in fees for services from the inhabitants of the county that should be called upon to do business with such officer. The Supreme Court of the State of Pennsylvania held that that was regulating the affairs of counties. Why of course it was. They also say: 'The prothonotary is a county officer. While his fees when received by him are his private property, they are paid by the people of the county, not, indeed assessed upon all the taxpayers as a salary would be, but upon all citizens who have business with the office or litigation in the courts. Every citizen of the county may be affected by such an act, and most of them surely will be.' And when they are affected by such an act they pay more and in the aggregate the citizens of the county were compelled to pay more for what was

done than they had under the former act, it became local and special, and affected the regulation of the affairs of counties. In the case at bar there is no such change of salary: There is not one cent more nor one cent less paid. In other words, the machine moves along just the same, only it has a different engineer.

"It is contended that vacancies should be filled by the general law now upon the statute book, being section 668 of the Compiled Laws of New Mexico as hereinbefore quoted. It will be observed that said last-mentioned section provides: that 'any vacancies that may hereafter occur in the board of county commissioners, of any county by reason of death, resignation, removal or otherwise shall be filled by appointment by the Governor.' In the case at bar the Governor could not fill by reason of a vacancy occurring by death, resignation or removal. There is not mentioned the filling of vacancies caused by legislative enactment, unless it is implied in the word 'otherwise.' The duty of defining the word 'otherwise' as used by the Legislature, is imposed upon us. We might inquire why the legislative power delegated to the governor the authority to fill vacancies at all. Certainly the Legislature would not have delegated such power had there been a vacancy occurring while the Legislature was in session. The session of the Legislature being limited by law to sixty days, that leaves the balance of two years in which no vacancy could be filled unless such power to fill had been delegated to some person or persons. If no provision had been made by the legislative power to fill vacancies, could they have been filled? Yes: by the legislative power, and by it only. If the Legislature intended that *any vacancy* that may occur shall be filled by appointment by the Governor why would it specifically point out vacancies caused by death, resignation or removal? It would be a serious charge against the legislative intelligence that it meant *any vacancy* that might occur shall

be filled by appointment by the Governor, after employing the language it did. If the word 'otherwise' is to be construed to mean 'any vacancy,' then the words 'caused by reason of death, resignation or removal' were surplusage and must stand for naught, because they are included in the words 'any vacancy.' We believe it to be a universal rule of construction that when general words follow particular and specific words, the general words are confined, in meaning, to the things of like kind and nature designated by the specific words. Sutherland on Stat. Const., sec. 268; Jensen v. State, 19 N. W. 387 (Wis); State v. Dennison, 82 N. W. 383 (Neb.)

"In the Wisconsin case, supra, an indictment was found under a section of the law which provided, 'if any tavernkeeper or other person shall sell, give away, or barter any intoxicating liquors on the first day of the week commonly called Sunday, or on the day of the annual town meeting, or the annual election, such tavernkeeper or other persons offending shall be deemed guilty of a misdemeanor.' The words 'or other person' following the words 'tavernkeeper' would seem to have been used in the very broadest sense. The indictment charged the defendant with having sold liquor on Sunday in violation of this statute, without changing his occupation. The lower court held that the words 'or other person' included any and all persons. The Supreme Court of Wisconsin, however, in construing this section of the law said:

" 'The words "tavernkeeper" indicated very clearly the class of persons against whom the act was aimed, and the general words "other persons" must under the familiar rule, *noscitue a sociis* be taken to mean a similar class of persons and not to be extended so as to include all persons;' and cite a long list of authorities in support of such construction. They further say 'the word "tavernkeeper" as used in this statute, clearly means a person a part at least

of whose business, is to sell intoxicating liquors' and apply the rule above quoted. 'The words "other persons" must be held to mean persons whose business either in whole or in part is to sell such drinks.' In the Nebraska case, supra Dennison was indicted under section 225 of the criminal code, which is as follows: 'If any person . . . shall open or establish as owner or otherwise, any lottery or game of chance in this state,' etc. The indictment charged that Dennison opened and established a lottery or game of chance within the State. After the jury was sworn, defendant's attorney objected to the introduction of any testimony for the reason that the indictment did not state a crime, because it did not allege that Dennison opened and established a lottery as owner or in some similar capacity. The objection to the introduction of testimony was sustained, and the defendant was discharged. Under a rule of practice in Nebraska, the prosecuting attorney may file exceptions in the Supreme Court to the rule of the lower court for the purpose of having the law settled, and it was done in this case. The Supreme Court said: 'It was not error on the part of the lower court to exclude evidence under the information claimed to allege a crime under section 225, and which did not allege the capacity in which the defendant acted in opening and establishing the lottery herein mentioned.' In short, a perusal of the Nebraska case, supra, discloses the construction that the word 'otherwise' following the word 'owner' was resticted to an owner or some one in similar or like capacity. So, where a statute read that real estate actually purchased or otherwise acquired by an intestate, it should descend to the father, if he is living, or to the mother of such intestate if the father is dead. The words 'otherwise acquired' did not include the land descended from the parents. Roberts v. Jackson, 4 Yerg. (Tenn.) 322, and citing several other Tennessee cases.

"State v. Wood County, 72 Wis. 637, is a case in which the term 'otherwise' is construed, and which it is

employed in a statute as follows, referring to a county road tax,' . . . which shall be expended under their (county board) direction, in making culverts, grading, gravelling, ditching or otherwise improving such highways.' must be held to mean the improvements of such highways by 'the making of culverts, grading, gravelling, ditching or other improvements of a similar character, and not the building of a bridge.'

"Applying this rule of construction to section 688 of the Complied Laws, supra, it would seem that the governor may fill vacancies in the office of county commissioner when such vacancy is caused by death, resignation or removal, or vacancies caused in a like or similar manner. It certainly could not extend to a vacancy caused by a legislative enactment. Such a vacancy is not of like kind, character, or nature, as one caused by death, resignation, or removal. Nor could it extend to such a vacancy for the further reason that the reason for delegating the power to the Governor would not then exist. The legislative power being in a position then to act, the Legislature being in session, and a vacancy occurring at such time, would not prompt the legislative power to delegate its power to fill such vacancies. As to whether or not the removal by legislative enactment, is of like kind and character as death, resignation or removal, was construed by the legislature when it passed the act appointing the respondents. In other words, if conferring upon the Governor the power to appoint if in seeming conflict with the act complained of, then the Legislature has construed the former act by restricting it not to include vacancies caused by legislative enactment. But were the act appointing respondents in conflict with said section 688, the last act would be in force. The power that authorized the Governor to appoint would certainly revoke it. A legislative interpretation of a statute is not binding upon a court, but should have great weight. In Jackson v. Board of Supervisors, etc., 34 Neb. 680, the court says: 'Legisla-

tive construction, although not necessarily conclusive upon the judicial part of the government, it is entitled to great weight when deliberately given.' Citing Bishop on Written Law; Sedgwick on Stat. Const.; Coutant v. People, 11 Wend. 511.

"We are of the opinion that the legislative power in appointing the respondents, Tomas C. Gutierrez and Severo Sanchez, county commissioners of Bernalillo county, acted within its authority, scope and duty. We are also of the opinion that the act complained of is not in conflict with the Constitution of the United States, the organic act, or any act of Congress and is therefore legal.

"For the foregoing reasons, the demurrer to the answer of the respondents is overruled, and the information dismissed by the court.

B. S. BAKER, Judge."